**In re MARRIAGE OF Jane H. GALLO, Petitioner,**

**and**

**Frank G. Gallo, Respondent.**

**No. 86SC128.**

Supreme Court of Colorado, En Banc.

Feb. 8, 1988.

Nancy L. Cohen, Frank Plaut, Plaut, Lipstein, Beckman, P.C., Lakewood, for petitioner.

Frederick Epstein, Epstein, Epstein & Lozow, P.C., Denver, Peter L. Franklin, Polidori, Rasmussen, Gerome & Jacobson, Lakewood, Irvin M. Kent, Aurora, for respondent.

ROVIRA, Justice.

In this case, we return to an issue last addressed by this court in *Ellis v. Ellis*, 191 Colo. 317, 552 P.2d 506 (1976): Whether military retirement pay is property subject to division in a dissolution of marriage proceeding. In an unpublished opinion, the court of appeals, citing our decision in *Ellis*, affirmed a ruling of the district court which held that military retirement pay is not marital property, and therefore, not subject to division. Because we hold today that military retirement pay constitutes marital property, we reverse the judgment and remand the case for further proceedings.

I.

The petitioner, Jane H. Gallo (wife), and the respondent, Frank G. Gallo (husband), were married in 1953. At the time wife filed her petition for divorce in 1981, their four children were emancipated, she was 51

years old, and her husband was 50 years of age.

During almost all of their marriage, husband was a member of the United States Air Force. After approximately 29 years of military service, he retired as a colonel. Since retirement, he has been receiving military retirement pay. The principal point of contention in the parties' dissolution proceedings, and the issue before this court, is whether that pay should be considered marital property, and therefore subject to equitable division.

In early 1983, a decree of dissolution was entered and later, after a hearing on permanent orders, the trial court issued its findings, conclusions, and order. The court approved a stipulation which resolved such issues as the division of real and personal property, non-pension financial assets, and waiver of maintenance by both parties because of husband's re-marriage and wife's pending re-marriage. The court also ruled that "under the case of *Ellis v. Ellis* (citation omitted), [h]usband's military retirement benefits are not marital property, and therefore not subject to division." Although denying wife's request to include husband's retired pay as marital property, the court accepted, pursuant to an offer of proof, testimony regarding the present value of husband's retirement pay and wife's contribution to husband's military career.

Husband stated in an affidavit concerning his financial affairs that his monthly military retirement pay amounted to $2,682.69. Wife introduced the testimony of a certified public accountant who testified that the present value of husband's military pay amounted to $257,000. He arrived at this figure by first calculating the life expectancy of a 51–year–old man, which is 25.2 years, or the equivalent of 301 months. He then multiplied 301 times husband's current monthly retirement pay, which equals $807,490. Using a 12 percent discount rate, he discounted the gross figure to reflect the present value of $257,000.

Objecting to the district court's determination concerning husband's military retirement pay, the wife appealed. In an unpublished opinion, the court of appeals affirmed, considering itself bound by *Ellis*, 191 Colo. 317, 552 P.2d 506.

We granted wife's petition for certiorari to consider whether husband's military retirement pay is marital property subject to division in a dissolution of marriage proceeding.

## II.

An Air Force officer who has 20 years of service, at least 10 of which have been active service as a commissioned officer, may request the Secretary of the Air Force to retire him. 10 U.S.C. § 8911 (1982).[1] An officer who requests retirement is entitled to "retired pay." The amount of retired pay is wholly within the control of Congress; benefit levels are a function of rank achieved at the time of retirement and length of service. 10 U.S.C. §§ 8929, 8961, 8991 (1982). Retired pay can be adjusted to reflect such changes as increases in the consumer price index. 10 U.S.C. § 1401a (1982). In the event that retired officers are recalled to active duty, retired pay may be re-computed after the officer's release from active duty. 10 U.S.C. § 1402 (1982). Retired pay is considered taxable income under section 61(a)(2) of the Internal Revenue Code.

The military retirement system is non-contributory in that neither the service member nor the federal government makes periodic contributions to any fund during the period of active service; instead, retired pay is funded by annual appropriations. *McCarty v. McCarty*, 453 U.S. 210, 214, 101 S.Ct. 2728, 2732, 69 L.Ed.2d 589 (1981). Retired pay terminates upon the retired officer's death, and does not pass to the member's heirs. The member may, however, designate a beneficiary to receive any arrearages that remain unpaid at death. 10 U.S.C. § 2771 (1982). In addition, there are statutory schemes which

---

**1.** The statutory provisions dealing with military retirement pay are found in 10 U.S.C. §§ 1401–9842 (1982). Where identical provisions are listed for each of the service branches, references in the text are to the Air Force, 10 U.S.C. §§ 8011–9842 (1982).

allow a service member to set aside a portion of the member's retired pay for his or her survivors. *See, e.g.,* Retired Serviceman's Family Protection Plan (RSFPP) (codified at 10 U.S.C. §§ 1431–46 (1982)).

Under the Uniform Dissolution of Marriage Act, §§ 14–10–101 to –133, 6B C.R.S. (1987), the district court in a dissolution proceeding is required to "divide the marital property, without regard to marital misconduct, in such proportions as the court deems just after considering all relevant factors...." § 14–10–113(1), 6B C.R.S. (1987).

Although the Uniform Act does not define the term property, section 14–10–113(2), 6B C.R.S. (1987), provides that marital property includes all property acquired by either spouse subsequent to the marriage, with certain exceptions not applicable in this case.

In *Ellis*, the husband was receiving military retirement pay at the time of the dissolution of the marriage. This court, in determining that such pay is not property under the dissolution of marriage act, said: "Our reason is that it does not have any of the following elements: cash surrender value; loan value; redemption value; lump sum value; and value realizable after death." 191 Colo. at 319, 552 P.2d at 507.

Subsequently, in *In re Marriage of Mitchell,* 195 Colo. 399, 579 P.2d 613 (1978), we upheld the trial court's ruling that a husband's contributions on deposit with the Colorado Public Employee's Retirement Association (PERA) were marital property. We noted in *Mitchell* that "[t]here is nothing speculative or uncertain about the husband's right to the money; it belongs to him now and he could, if he wished, quit work and withdraw the money he has accumulated." 195 Colo. at 403, 579 P.2d at 616.

We then went on to distinguish the husband's contributions to his PERA fund from the military retirement pay considered in *Ellis:*

PERA funds have many of the attributes which we found lacking in military retirement pay. Our distinction between the two retirement plans is based on a belief that it would be unwise to consider as property those items which have no present value and which may never acquire value. A military retirement plan of the type discussed in *Ellis* may never be of any value if the employee dies before he retires. Because its future value is only speculative, and it has no present "exchangeable" value, it cannot be considered marital property.

195 Colo. at 403, 579 P.2d at 617.

Since this court decided *Ellis*, changes in the law at both the national and state level lead us to conclude that the holding of *Ellis* is no longer appropriate.

In *McCarty v. McCarty,* 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), the United States Supreme Court, finding a conflict between the property right asserted by the nonmilitary member-spouse in military pension benefits and the clear and substantial federal interests embodied in the federal military retirement system, held that in the absence of a change in law by Congress, the federal law precluded the application of state community property law principles to existing interests in military non-disability retirement pensions upon dissolution of marriage and subsequent property division.[2] *See* Note, *Divisibility of Military Non-disability Retirement Benefits Upon Marriage Dissolu-*

---

2. In *McCarty,* the Supreme Court found that "the application of community property principles to military retired pay threatens grave harm to clear and substantial federal interests." 453 U.S. at 232, 101 S.Ct. at 2741. Specifically, the community property division of retired pay has the potential to frustrate the two major goals for which Congress has enacted a military retirement system: "to provide for the retired service member, and to meet the personnel management needs of the active military forces." *Id.* at 232–33, 101 S.Ct. at 2741. "The value of retired pay as an inducement for enlistment ... is obviously diminished to the extent that the service member recognizes that he or she may be involuntarily transferred to a State that will divide that pay upon divorce." *Id.* at 234, 101 S.Ct. at 2742. In addition, the reduction of retired pay by community property award lessens the incentive to retire, thus frustrating the congressional goal of encouraging "orderly promotion and a youthful military." *Id.* at 235, 101 S.Ct. at 2742.

*tion,* 22 J.Fam.L. 333 (1983–84). In the words of the court:

> We recognize that the plight of an ex-spouse of a retired service member is often a serious one.... Nonetheless, Congress may well decide, as it has in the civil service and foreign service context, that more protection should be afforded a former spouse of a retired service member. This decision, however, is for Congress alone.

453 U.S. at 235–36, 101 S.Ct. at 2742–43. Consequently, the nonmilitary spouse would be effectively barred from claiming any community property interests in the member's military pension upon dissolution of the marriage.

In 1982, Congress enacted the Uniformed Services Former Spouses' Protection Act (Protection Act) (codified at 10 U.S.C. § 1408 (1982)). The legislative history of the Protection Act makes it clear that the principal purpose of the legislation was to legislatively overrule the *McCarty* decision, so that once again state courts would be free to consider and divide military retirement pay as marital property.[3]

Under the terms of the Protection Act, a state court may, subject to certain limitations:

> treat disposable retired or retainer pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court.

10 U.S.C. § 1408(c)(1) (1982). The Protection Act requires the respective service secretary to comply, within certain limits, with a valid state court property division decree concerning the redirection of military retirement proceeds. 10 U.S.C. § 1408(a)(2) (1982). If the parties' marriage lasted 10 years or more during the time the one spouse was a member of the armed forces, the nonmilitary spouse may receive directly from the respective service's military finance center payment in the amount of the disposable retired or retainer pay specifically provided for in the court order. 10 U.S.C. § 1408(d)(1)–(2) (1982).

Although the Protection Act does not mandate the division of military retirement pay in dissolution proceedings, but simply authorizes each state to make the decision whether military retirement pay should be subject to division, it is clear that there is strong congressional support for state court determinations that military retirement pay is marital property. Not only has Congress explicitly affirmed that states may, with some restrictions, order a division of military non-disability retirement pay incidental to dissolution proceedings, but Congress has also provided the nonmilitary spouse with a limited enforcement remedy to make it easier for that spouse to collect the appropriate interest in the pension entitlement. Note, *Military Retirement,* 22 J.Fam.L. at 355.

The second major change which causes us to reevaluate our holding in *Ellis,* is our recent decision in *In re Marriage of Grubb,* 745 P.2d 661 (Colo.1987). *Grubb* concerned a spouse's interest in a vested, but unmatured employer-supported private pension plan.[4] In *Grubb,* we held that a "spouse's interest in a vested but unmatured employer-supported pension plan, to the extent that such plan has been funded by employee and/or employer contributions during the course of a marriage, is marital property subject to equitable distribution in a dissolution proceeding." 745 P.2d at 665. The controlling consideration is that "an

---

3. *See, e.g.,* Senate Report No. 97–502, 97th Cong., 2d Sess. 16, *reprinted in* 1982 U.S. Code Congressional and Administrative News 1555, 1611 ("the purpose of this provision is to place the courts in the same position they were in on June 26, 1981, the date of the *McCarty* decision, with respect to treatment of non-disability military retired or retainer pay. The provision is intended to remove the federal pre-emption [sic] found to exist by the United States Supreme Court and permit state and other courts of competent jurisdiction to apply pertinent state or other laws in determining whether military retired or retainer pay should be divisible.").

4. "Vesting" occurs when an employee has completed the minimum terms of employment necessary to be entitled to receive retirement pay at some time in the future; a vested right "matures" when the employee reaches retirement age and elects to retire. *Grubb,* 745 P.2d at 665.

employee who is fully vested under a pension plan has a *right* to receive payment at some time in the future." *Id.* (emphasis in original). Although certain contingencies are present, such as death, which might divest the employee of any pension benefits after vesting but before maturation, we determined in *Grubb* that "[t]he mere existence of a future contingency does not downgrade that vested right to non-marital property even though receipt of payment under the plan might be contingent upon the employee surviving until the actual commencement of retirement." *Id.* We went on to state that "any statement or intimation to the contrary in our prior decisions in *Ellis* and *Mitchell* is hereby expressly disapproved." *Id.*

*Grubb* concerned a vested but unmatured pension, one we were still prepared to classify as marital property subject to equitable distribution. In the instant case, husband's right to his pension has "vested," in that he has completed his 20 years of military service, and has "matured," in that he has retired and has begun receiving benefits. This case, therefore, presents an even stronger argument than *Grubb* for recognizing the economic asset in question as marital property subject to equitable division in a dissolution proceeding.

### III.

We declared in *Grubb* that "[a] rule directed to the disposition of property in a dissolution proceeding can only be as sound as the economic reality which it attempts to service." 745 P.2d at 664. We disapproved our earlier holdings in *Ellis* and *Mitchell* because we felt that those cases did not adequately account for the true nature of retirement plans. *Id.*

Courts which have followed our holding in *Ellis* have been criticized for rather mechanically applying rules of property law, and appear "not to have considered equity at all." *Linson v. Linson*, 1 Haw.App. 272, 277, 618 P.2d 748, 751 (1980). Those courts which have recognized in general an interest in a retirement plan as marital property have proceeded from the assumption that such benefits "do not derive from

the beneficence of the employer, but are properly part of the consideration earned by the employee." *In re Marriage of Brown*, 15 Cal.3d 838, 845, 544 P.2d 561, 565, 126 Cal.Rptr. 633, 637 (1976). Since pension benefits represent a form of deferred compensation for services rendered, the employee's right to such benefits is a contractual right, derived from the terms of the employment contract. *Grubb*, 745 P.2d at 665.

In *Grubb*, we recognized that pension rights are among the most important part of an employee's compensation package which he or she brings to the marriage unit. 745 P.2d at 664, citing *Deering v. Deering*, 292 Md. 115, 122–23, 437 A.2d 883, 887 (1981). Moreover, in a situation where economic circumstances prevent a husband or wife from saving or investing a portion of the wage earner's income, the pension right swells in importance as retirement approaches, and often represents the most valuable economic asset accumulated by either party to the marriage. *Id.* at 665 quoting *Deering*, 292 Md. at 122–23, 437 A.2d at 887; *see also In re Marriage of Hunt*, 78 Ill.App.3d 653, 661, 34 Ill.Dec. 55, 61, 397 N.E.2d 511, 517 (1979). It is likely that without the expectation of retirement benefits, the parties would have utilized their labors to purchase other deferred income assets. "[T]here is no reason to exclude one form of deferred income asset from the marital estate while including others." *Deering*, 292 Md. at 125, 437 A.2d at 888.

Because pension benefits have come to be viewed as a substitute for wages or salary, other courts have held that whether an employee's pension is contributory or noncontributory—as in the case with military retirement pay—has no significance concerning whether it is marital property. *Hunt*, 78 Ill.App.3d at 661–62, 34 Ill.Dec. at 62, 397 N.E.2d at 518. Furthermore, the principle that retirement benefits are community property has been held to apply whether the source of the retirement fund lies in a state, federal, military, or private employment relationship. *In re Marriage of Fit-*

*hian,* 10 Cal.3d 592, 596, 517 P.2d 449, 451, 111 Cal.Rptr. 369, 371 (1974).[5]

Although one or more contingencies may be present which may divest the parties of their pension benefits, that possibility is more remote when the pension benefits have both vested and matured, as is true in the instant case. In any event, this court has joined other courts in stating that contingencies should be taken into account when the court disposes of marital property between the parties, not when determining which assets belong in the marital estate. *Grubb,* 745 P.2d at 665, citing *Deering,* 292 Md. at 129, 437 A.2d at 891.

Drawing upon these same principles as applied to military retirement benefits, a majority of courts which have examined the question have held that military retirement pay is not a gratuity, but an earned property right which accrues by reason of individual years of military service. *See, e.g., In re Marriage of Musser,* 70 Ill. App.3d 706, 709, 27 Ill.Dec. 240, 242, 388 N.E.2d 1289, 1291 (1979); *Krueger v. Krueger,* 73 N.J. 464, 470–71, 375 A.2d 659, 662 (1977); *In re Marriage of Miller,* 187 Mont. 286, 289, 609 P.2d 1185, 1186 (1980), *vacated and remanded* (in light of *McCarty*) 453 U.S. 918, 101 S.Ct. 3152, 69 L.Ed.2d 1000 (1982). Military retirement pay must be viewed realistically as compensation for past, not present services. Congress's purpose in creating the retirement pay system was to enhance the morale of military personnel and to encourage them to remain in the military, and not to compensate them for their limited responsibility to the government after their retirement.[6] *Fithian,* 10 Cal.3d at 604, 517 P.2d at 456, 111 Cal.Rptr. at 376. This view of military retirement benefits as a form of deferred compensation is closer to econom-

ic reality than the view we endorsed in *Ellis.* Contra *McCarty,* 453 U.S. at 223–24 n. 16, 101 S.Ct. at 2736–37 n. 16 (in light of significant restrictions upon the officer's present activities and the real risk of recall, strong possibility exists that Congress intended military retired pay to be, in part, reduced compensation for reduced current services).

Logically, the right to such payment should be treated as property acquired during marriage, and since military retirement pay is awarded in return for past services, it constitutes an asset which should be divisible as marital property to the extent the entitlement was based upon military service rendered during all or part of the marriage. *Krueger v. Krueger,* 139 N.J. Super. 413, 420, 354 A.2d 340, 344–45 (1976); *modified,* 73 N.J. at 464, 375 A.2d at 659 (1977); *Fithian,* 10 Cal.3d at 604, 517 P.2d at 457, 111 Cal.Rptr. at 377. Just as wages represent marital property in Colorado, *see* § 14–10–113(2), 6B C.R.S. (1987), so too should vested and matured military retirement benefits representing deferred compensation for work performed during the marriage relationship also constitute marital property.

Congress could have eliminated the military retirement system and increased the salary levels for military personnel on active duty. Since the decision was made to provide for retirement pay, a certain amount of compensation was not available to the parties during their years on active duty for use in other investments. The nonmilitary spouse, therefore, through his or her contribution to the marriage, obtained an interest in the marital assets of the military spouse's earned retirement pay. *Chisnell v. Chisnell,* 82 Mich.App. 699, 706, 267 N.W.2d 155, 159 (1978).[7]

---

5. The fact that Colorado, unlike California, is an "equitable division" and not a "community property" state has no bearing on the underlying analysis, which holds true for many states regardless of the manner in which the state provides for property division upon dissolution of marriage.

6. As support for this proposition, the California Supreme Court in *Fithian* noted that the amount of retirement pay a servicemen receives bears

no relation to any continuing duties after retirement, but is calculated solely on the basis of the number of years served on active duty and the rank attained prior to retirement. 10 Cal.3d at 604, 517 P.2d at 456, 111 Cal.Rptr. at 376. *See* 10 U.S.C. §§ 1401, 8929, 8961, 8991 (1982).

7. Moreover, in the instant case, wife's offer of proof at the hearing showed that both parties, each the product of a military family, were aware even before marriage of the importance

Inequities are created in treating the nonmilitary spouse more harshly at the time of the division of property in a dissolution proceeding than spouses able to claim an interest in other, nonmilitary, private and public retirement systems. Our holding in *Ellis* should no longer bar the recognition of military retirement benefits as marital property. "If appropriate, the employee spouse can be protected against the failure of any contingency that defeats his right to benefits, by a deferred division, whereby the nonemployee spouse receives his share if, as, and when received by the employee spouse." McGuane & Zuber, *Valuation of Pension and Profit–Sharing Benefits,* 3 Journal of American Academy of Matrimonial Lawyers, 13, 26–7 (1987); *see also Hunt,* 78 Ill.App.3d at 663–64, 34 Ill.Dec. at 63, 397 N.E.2d at 519; *Brown,* 15 Cal.3d at 848, 544 P.2d at 567, 126 Cal.Rptr. at 639.

Further, military retirement pay, earned because of years of service, is comparable to the pension benefits an employee receives under a private plan, particularly insofar as all condition precedents have been satisfied, the officer has retired, and has begun receiving money. Although Congress could end the system tomorrow, "[n]o sound reason justifies treating [military retirement pay] differently from any other type of property whose value could become worthless in the future, *e.g.,* the corpus of a trust may dry up or a private pension plan could become bankrupt." *Krueger,* 73 N.J. at 470, 375 A.2d at 662. Unless an extraordinary chain of events should arise, the husband will not be recalled to active duty. "The mere existence of a future contingency does not downgrade that right to non-marital property...." *Grubb,* 745 P.2d at 665.

Our holding today is a recognition of the economic and social realities which often characterize military families, which the record indicates are also present in the instant case. Wife testified that to support her husband's career, she gave up the opportunity to pursue a career of her own, moved with her former husband some thirteen times as he was transferred from one military facility to another, and participated in many activities expected of a military wife in furthering her husband's career. In light of these circumstances, it is evident that husband's military career was in reality a joint investment of both parties, and wife has a claim to some portion of husband's military retirement pay which accrued during their years of marriage.

The overwhelming majority of courts which have considered this question have held that military retirement pay is marital property subject to division upon dissolution.[8] Our holding in *Ellis* is still good law in only a handful of jurisdictions.[9]

military retirement benefits play in a military household's economic portfolio.

**8.** *E.g., Chase v. Chase,* 662 P.2d 944 (Alaska 1983); *Steczo v. Steczo,* 135 Ariz. 199, 659 P.2d 1344 (App.1983); *Womack v. Womack,* 16 Ark. App. 139, 698 S.W.2d 306 (1985); *In re Marriage of Ankenman,* 142 Cal.App.3d 833, 191 Cal.Rptr. 292 (1983); *Smith v. Smith,* 458 A.2d 711 (Del. Fam.Ct.1983); *Pastore v. Pastore,* 497 So.2d 635 (Fla.1986); *Linson v. Linson,* 1 Haw.App. 272, 618 P.2d 748 (1980); *Griggs v. Griggs,* 107 Idaho 123, 686 P.2d 68 (1984); *In re Marriage of Korper,* 131 Ill.App.3d 753, 86 Ill.Dec. at 766, 475 N.E.2d 1333 (1985); *Jones v. Jones,* 680 S.W.2d 921 (Ky.1984); *Stevens v. Stevens,* 476 So.2d 883 (La.Ct.App.1985); *Nisos v. Nisos,* 60 Md.App. 368, 483 A.2d 97 (1984); *Chisnell v. Chisnell,* 82 Mich.App. 699, 267 N.W.2d 155 (1978); *Deliduka v. Deliduka,* 347 N.W.2d 52 (Minn.Ct.App. 1984); *Powers v. Powers,* 465 So.2d 1036 (Miss. 1985); *Coates v. Coates,* 650 S.W.2d 307 (Mo.Ct. App.1983); *In re Marriage of Kecskes,* 683 P.2d 478 (Mont.1984); *Taylor v. Taylor,* 217 Neb. 409, 348 N.W.2d 887 (1984); *Burton v. Burton,* 99 Nev. 698, 669 P.2d 703 (1983); *Castiglioni v. Castiglioni,* 192 N.J.Super. 594, 471 A.2d 809 (1984); *Walentowski v. Walentowski,* 100 N.M. 484, 672 P.2d 657 (1983); *Morton v. Morton,* 76 N.C.App. 295, 332 S.E.2d 736 (1985); *Delorey v. Delorey,* 357 N.W.2d 488 (N.D.1984); *Teeter v. Teeter,* 18 Ohio St.3d 76, 479 N.E.2d 890 (1985); *Wood & Wood,* 66 Or.App. 941, 676 P.2d 338 (1984); *Major v. Major,* 359 Pa.Super. 344, 518 A.2d 1267 (1986); *O'Connor v. O'Connor,* 694 S.W.2d 152 (Tex.Ct.App.1985); *Sawyer v. Sawyer,* 1 Va.App. 75, 335 S.E.2d 277 (1985); *Flannagan v. Flannagan,* 42 Wash.App. 214, 709 P.2d 1247 (1985); *Butcher v. Butcher,* 357 S.E.2d 226 (W.Va.1987); and *Thorpe v. Thorpe,* 123 Wis.2d 424, 367 N.W.2d 233 (1985).

**9.** *See, e.g., Kabaci v. Kabaci,* 373 So.2d 1144 (Ala.Civ.App.1979); *Hiscox v. Hiscox,* 179 Ind. App. 378, 385 N.E.2d 1166 (1979); *Baker v. Baker,* 120 N.H. 645, 421 A.2d 998 (1980); *Baker v. Baker,* 546 P.2d 1325 (Okla.1975); and *Brown v. Brown,* 279 S.C. 116, 302 S.E.2d 860 (1983).

■ Thus, we hold today that vested and matured military retirement pay, which has accrued during all or part of a marriage, constitutes marital property subject to equitable division in a dissolution proceeding. Statements to the contrary in our prior decisions are hereby expressly overruled.

## IV.

Since the opinion we announce today represents a change in the law of this state, it is necessary to remand this case to the district court with instructions to consider an equitable division of the husband's military retirement pay.

■ Trial courts are vested with broad discretion to fashion an equitable division of the parties' property in a dissolution proceeding. *In re Marriage of Price*, 727 P.2d 1073, 1077 (Colo.1986); *In re Marriage of Weaver*, 39 Colo.App. 523, 526, 571 P.2d 307, 309 (1977); *In re Marriage of Lodholm*, 35 Colo.App. 411, 415, 536 P.2d 842, 844 (1975). Placing a present value on a pension may be difficult, even where, as in the instant case, the benefits have matured. Still, difficulties in fashioning an equitable division of military retirement pay cannot justify a failure to include such pay as marital property. Courts in other states have long fashioned orders providing for the equitable division of marital property in military and other forms of pensions. *See, e.g., Hunt*, 78 Ill.App.3d at 663, 34 Ill.Dec. at 63, 397 N.E.2d at 519 ("[d]ifficulties in valuation are not an insurmountable barrier to including a pension or profit sharing interest, whether matured, vested or nonvested, as marital property.").

In *Grubb*, we discussed two of the more frequently used methods of valuation as a means of offering a guide for trial courts making valuation determinations in this often complicated and speculative field. These two methods have come to be known as the: (1) present cash value method; and (2) reserve jurisdiction method.

Under the present cash value method, a present value is placed on the retirement plan, as of the date of dissolution, by first using actuarial tables to determine the life expectancy of the military spouse. That figure (often expressed in months rather than years) is then multiplied by the current monthly military retirement benefits to arrive at a gross benefit figure which is then discounted to present value to reflect various factors, including mortality, interest, inflation, and tax assumptions. *Grubb*, 745 P.2d at 666; *Hunt*, 78 Ill.App. 3d at 663, 34 Ill.Dec. at 63, 397 N.E.2d at 519; *Deering*, 292 Md. at 129–30, 437 A.2d at 891. At the parties' dissolution hearing in the instant case, a witness calculated the present value of husband's military pension using essentially the same method.

■ Once the trial court has determined the present value of that part of the pension which is marital property,[10] the court may award that interest to the military spouse and give the nonmilitary spouse other marital property to offset the awarding of the pension interest to the military spouse. *Hunt*, 78 Ill.App.3d at 663, 34 Ill.Dec. at 63, 397 N.E.2d at 519; *Johnson v. Johnson*, 131 Ariz. 38, 42, 638 P.2d 705, 708 (1981).

The present cash value method may be preferred if the employee-spouse's pension rights can be valued accurately, and if the marital estate includes sufficient equivalent property available to the nonmilitary spouse to offset the award of the pension plan to the military spouse. *Johnson*, 31 Ariz. at 42, 638 P.2d at 709; *Grubb*, 745 P.2d at 666; Comment, *Vested but Unmatured Pensions as Marital Property*, 14

---

10. The amount of the pension included as marital property would then be the present value of the interest multiplied by a fraction whose numerator is the number of years of marriage during which benefits were being accumulated, and whose denominator is the total number of years during which benefits are accumulated. *Hunt*, 78 Ill.App.3d at 663, 34 Ill.Dec. at 63, 397 N.E.2d at 519.

The nonmilitary spouse's pro-rata share of the pension benefits usually ranges from 20 to 50 percent of the total pension. Comment, *Vested but Unmatured Pensions as Marital Property*, 14 Rutgers L.J. at 193; *see, e.g., Musser*, 70 Ill.App.3d at 709, 27 Ill.Dec. at 242, 388 N.E.2d at 1291 ("[s]ince the parties were married for 217 months of James' 240 months of military service, Margaret has an interest to be determined by the trial court in 217/240 percent of James' net retirement benefits as part of the property settlement.").

Rutgers L.J. 175, 189 (1982). This last element is a crucial factor in military retirement pension cases where—as is alleged in the instant case—the pension represents the parties' greatest economic asset.

■ Another approach is for the trial court to utilize what has become known as the reserve jurisdiction method. This method is often appropriate where the difficulties of placing a present value on the pension, the needs of the parties, or the inability to set off a certain amount of property against the size of the pension militate against using the present cash value method. Under this approach, the trial court may, in its discretion, determine the formula for division at the time of the decree, but delay the actual distribution until payments are received, retaining jurisdiction to award the appropriate percentage of the marital interest in each payment "if, as, and when, it is paid out." *Johnson*, 131 Ariz. at 41, 638 P.2d at 708. *See also Hunt*, 78 Ill.App.3d at 663, 34 Ill.Dec. at 63, 397 N.E.2d at 519; *Weir v. Weir*, 173 N.J.Super. 130, 135, 413 A.2d 638, 640 (1980); *Deering*, 292 Md. at 130–31, 437 A.2d at 891–92.

The reserve jurisdiction method has the effect of equally apportioning any risk of forfeiture upon both parties to the dissolution proceeding. Under this method, the court need not determine the present value of the retirement plan, and can calculate the appropriate percentage to which the nonmilitary spouse will be entitled once payment begins. *Grubb*, 745 P.2d at 666; *Deering*, 292 Md. at 130–31, 437 A.2d at 891–92. Under this approach, the pension can be equitably divided between the parties, without requiring one spouse to pay out a portion of moneys not yet received. *Weir*, 173 N.J.Super. at 135, 413 A.2d at 640.

A liability of this latter approach is that continued supervision by the court is often required. Further resort to the courts can be ameliorated, however, by determining a formula or percentage by which the payments should be divided at the time of the dissolution decree. Note, *Pension Rights as Marital Property: A Flexible Approach*, 48 Mo.L.Rev. 245, 254 (1983).

Moreover, the Protection Act lessens the administrative burden inherent in equitably dividing property of this nature by providing that, under certain conditions, the nonmilitary spouse may receive payment directly from the respective service's financial center pursuant to a division specified in a court order. *See* 10 U.S.C. § 1408(d)(1) (1982).

The trial court may, of course, consider other methods of valuation which might better address the interests and needs of the parties. "Our intent is not to create inflexible rules of property valuation," but rather to provide "trial courts with alternative methodologies that have proven effective in other jurisdictions." *Grubb*, 745 P.2d at 666. The key to an equitable distribution is fairness, not mathematical precision. *In re Marriage of Clark*, 13 Wash. App. 805, 810, 538 P.2d 145, 148 (1975).

Accordingly, we reverse the judgment of the court of appeals and remand with directions to return the case to the district court for further proceedings consistent with the views herein expressed.