Wendel Speer KUHN, Jr., Francis E. Becker, Jr., Bruce C. Derenthal, Julian Russell Dracon, Jacqueline Farrar, Robert J. Flor, Edward N. Gootee, Jr., David S. Harrigan, Jerry D. Jacks, Joe B. Mohorn, Richard C. Poyns, Donald L. Tatterson, Drew Charles Weyland, Richard W. Zolman, and all others similarly situated, Plaintiffs–Appellees/Cross–Appellants,

v.

STATE of Colorado, the DEPARTMENT OF REVENUE OF the STATE OF COLORADO, and John J. Tipton, in his capacity as Executive Director of the Department of Revenue of the State of Colorado, Defendants–Appellants/Cross–Appellees.

Gary Boyd REIMER and James A. Mundt, Individually, and Gary Boyd Reimer, James A. Mundt, the Pikes Peak Chapter of the Retired Officers Association, a Colorado Non–Profit Corporation, and Chapter One of the Retired Enlisted Association, a Colorado Non–Profit Corporation, as Representatives of a Class of Those Similarly Situated Being Colorado Residents Receiving Retired Pay from the United States of America by Virtue of Federal Military Service, Plaintiffs–Appellees,

and

Wendel Speer Kuhn, Jr., Francis E. Becker, Jr., Bruce C. Derenthal, Julian Russell Dracon, Jacqueline Farrar, Robert J. Flor, Edward N. Gootee, Jr., David S. Harrigan, Jerry D. Jacks, Joe B. Mohorn, Richard C. Poyns, Donald L. Tatterson, Drew Charles Weyland,

Richard W. Zolman, and All Others
Similarly Situated, Intervenors–
Appellees,

v.

The EXECUTIVE DIRECTOR OF the
DEPARTMENT OF REVENUE OF the
STATE OF COLORADO, and the State
of Colorado, Defendants–Appellants.

Nos. 90SA299, 90SA300.

Supreme Court of Colorado,
En Banc.

Sept. 16, 1991.

**103**

Coghill & Goodspeed, P.C., G. Stephen Long, Paul E. Goodspeed, Mark Apelman, Denver, Sparks Dix Enoch, P.C., R. Kenneth Sparks, Timothy V. Dix, Colorado Springs, for plaintiffs-appellees/cross-appellants, and intervenors-appellees.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Maurice G. Knaizer, Deputy Atty. Gen., Larry A. Williams, First Asst. Atty. Gen., Thomas D. Fears, Michael L. Bieda, Asst. Attys. Gen., Denver, for defendants-appellants/cross-appellees, and defendants-appellants.

Warren, Mundt & Martin, P.C., James A. Mundt, Colorado Springs, for plaintiffs-appellees.

Justice ERICKSON delivered the Opinion of the Court.

This is a consolidated appeal by two groups of taxpayers who contend that section 39–22–104(4)(g), 16B C.R.S. (1988 Supp.), unconstitutionally discriminated between federal military retirees under age

1. Section 39–22–104 provided in relevant part:
    (4) There shall be subtracted from federal taxable income:

fifty-five and all other retirees under age fifty-five based on the source of their retirement pay. Section 39–22–104(4)(g) was repealed in 1989. In both *Kuhn v. State,* No. 89CV9164 (Denver Dist. Ct. June 8, 1990), and *Reimer v. Department of Revenue,* No. 89CV3837 (El Paso Dist.Ct. April 13, 1990), the trial courts found that the tax imposed under section 39–22–104(4)(g) was unconstitutional and granted the taxpayers' motions for summary judgment. Both district courts denied the taxpayers' requests for class certification. The Department of Revenue appeals both rulings that section 39–22–104(4)(g) was unconstitutional, or alternately argues that, even if unconstitutional, no refunds are due to the taxpayers. The *Kuhn* taxpayers cross-appeal the district court's refusal to grant their class certification.

We have jurisdiction over these appeals because both cases involve the constitutionality of a statute. *See* § 13–4–102, 6A C.R.S. (1987 & 1990 Supp.); *High Gear & Toke Shop v. Beacom,* 689 P.2d 624 (Colo. 1984). We affirm *Reimer.* We affirm *Kuhn* in part and reverse in part. We remand *Kuhn* to the Denver District Court for further proceedings on the issue of class certification. The class action issue was not preserved as an issue on appeal in *Reimer.*

I

The facts underlying both *Kuhn* and *Reimer* are not in dispute. Under Colorado's taxing scheme, as it existed before section 39–22–104(4)(g) was repealed, state and private retirees under the age of fifty-five were allowed a $20,000 income tax exemption for retirement benefits. Section 39–22–104(4)(f), 16B C.R.S. (1988 Supp.). The exemption included federal nonmilitary retirement benefits. Under section 39–22–104(4)(g), however, federal military retirees under the age of fifty-five were allowed only a $2,000 exemption on their military retirement benefits.[1]

. . . .

(g) Amounts received from the federal government as retirement pay by retired

Two groups of federal military retirees brought separate actions in the Denver and El Paso District Courts, alleging that the tax scheme illegally discriminated against federal military retirees in violation of 4 U.S.C. § 111 (1988) and constitutional principles of intergovernmental tax immunity set forth by the United States Supreme Court in *Davis v. Michigan Department of Treasury*, 489 U.S. 803, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989). The district court rejected the state's argument in *Kuhn* that, because the plaintiffs had failed to comply with the administrative procedures for requesting a tax refund, the court lacked jurisdiction over the case. The taxpayers in both *Kuhn* and *Reimer* sought class certification. Certification was denied by both district courts. The district courts granted the taxpayers' motions for summary judgment in both *Kuhn* and *Reimer* after concluding that section 39–22–104(4)(g) was unconstitutional and in violation of 4 U.S.C. § 111. Both courts ordered the Colorado Department of Revenue to make refunds to the affected plaintiffs insofar as the plaintiffs had filed refund claims within the applicable statute of limitations set forth in section 39–21–108(1)(a), 16B C.R.S. (1982).[2]

In this appeal, we will address whether the district court in *Kuhn* correctly determined that it had subject matter jurisdiction despite the plaintiffs' failure to comply with administrative procedures for requesting a tax refund. We will then determine whether the court abused its discretion by denying the taxpayers' class certification. Finally, we will consider whether the district courts in both *Kuhn* and *Reimer* correctly concluded that section 39–22–104(4)(g) was unconstitutional and, if so, whether the state owes refunds to those it illegally taxed.

members of any component of the armed forces of the United States, less than fifty-five years of age at the close of the taxable year, to the extent included in federal taxable income, *not to exceed two thousand dollars in any one taxable year.*
(Emphasis added.)

## II

■ The state asserts that the taxpayers in *Kuhn* failed to comply with section 39–21–108(1)(a), which provides that a taxpayer must first file a claim for refund and then wait six months before a suit for refund may be brought. The state claims that the Denver District Court did not have jurisdiction to hear the taxpayers' case because the taxpayers did not comply with these administrative procedures. We disagree.

■ A party challenging the constitutionality of a statute need not first exhaust the administrative remedies provided in the statute. *Fred Schmid Appliance & Television Co. v. City & County of Denver*, 811 P.2d 31, 33 (Colo.1991) (challenge to Denver municipal tax); *Hamilton v. City & County of Denver*, 176 Colo. 6, 11–12, 490 P.2d 1289, 1292 (1971) (challenge to Denver occupational and privilege tax). Thus, the *Kuhn* plaintiffs were not required to comply with the administrative procedures in section 39–21–108 before challenging its constitutionality. As the district court said,

> [r]equiring the plaintiffs to wait until their refund claims are denied would be futile in this case since the Department of Revenue has already publicly stated its position that it will not rule on any claims filed until a court has decided this issue. In addition, most of the plaintiffs have filed claims and six months have passed since they have done so.

We therefore agree with the district court that it had subject matter jurisdiction.

## III

■ The next question is whether the district court in *Kuhn* abused its discretion by not certifying the taxpayers as a class.

2. In addition, the district court in *Kuhn* held that the state was not a party for purposes of 42 U.S.C. § 1983 and, thus, dismissed that portion of the taxpayers' claim. That issue is not before us.

Normally, the decision to certify a class is within the trial court's discretion and will not be disturbed unless clearly erroneous. *Friends of Chamber Music v. City & County of Denver*, 696 P.2d 309 (Colo. 1985). In this case, however, the trial court in *Kuhn* relied on an incorrect supposition in arriving at its decision not to certify the class.

Under C.R.C.P. 23(a), a class may be certified only if:

> (1) The class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

The trial court, while admitting that the group may have been numerous and that there may have been common issues, said that "class certification is not generally favored in income tax cases." While it is generally true that class actions are disfavored in cases adjudicating federal tax issues, J. Moore & J. Kennedy, *Moore's Federal Practice* ¶ 23.02[2.–23] (2d ed. 1991) (hereinafter *Moore's Federal Practice*), a challenge to the constitutionality of a tax statute may provide grounds for a class action because of the "risk of inconsistent or varying determinations" created by separate actions. *Id.* at ¶ 23.02[2.–24]. Thus, although class certification has been denied in cases challenging a particular group of tax assessments, *78 South First St. Hous. Dev. Fund Corp. v. Crotty*, 150 A.D.2d 218, 220–21, 541 N.Y.S.2d 388, 390 (1989), *rev'd on other grounds*, 75 N.Y.2d 982, 556 N.Y.S.2d 509, 555 N.E.2d 906 (1990), class certification in cases challenging the legality of the underlying tax statute has generally been upheld. *See, e.g., Cherry Hills Farms, Inc. v. City of Cherry Hills Village*, 670 P.2d 779, 783 (Colo.1983) (action challenging constitutionality of service expansion fee); *see also Town of Eclectic v. Mays*, 547 So.2d 96, 102 (Ala.1989) ("A class action is a permissible vehicle to restrain the enforcement of an allegedly invalid tax...."); *Woosley v. State*, 227 Cal. App.3d 1053, 1074–75, 266 Cal.Rptr. 385, 398 (approving class action for taxpayer refunds) (relying on *Javor v. State Bd. of Equalization*, 12 Cal.3d 790, 527 P.2d 1153, 117 Cal.Rptr. 305 (1974)), *review granted in part*, 791 P.2d 337, 269 Cal.Rptr. 767 (1990), *order granting review modified*, 807 P.2d 1006, 279 Cal.Rptr. 777 (1991).

The trial court apparently relied on its interpretation of this action as a "tax case" when it declined to certify the class and, thus, did not make an in-depth analysis of rule 23's certification requirements.[3] The numerosity requirement is satisfied since, by the state's own estimate before the trial court, over 10,000 people would be affected by the outcome of this suit. *See Moore's Federal Practice, supra*, at ¶ 23.05; *Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D.Ill.1986) (when class is large, numbers alone are dispositive). The state asserts that the claims of the representative parties are not typical because each class member may or may not have complied with the administrative procedures for seeking a refund. That argument is not relevant since, as noted above, none of the class members were required to comply with underlying administrative procedures in order to contest the constitutionality of the statute. *See Fred Schmid Appliance & Television Co. v. City & County of Denver*, 811 P.2d 31, 33 (Colo.1991). Nor does the fact that, if the class prevails, each class member will be owed a different refund amount defeat typicality. *Riordan*

---

**3.** The trial court order stated:

> The Plaintiffs' Motion for Class Certification is denied. Although the plaintiff group may be numerous and there may be common issues, class certification is generally not favored in income tax cases. *See Moore's Federal Practice*, ¶ 23.02[2.–23]. Nor have the Plaintiffs established the numbers of the proposed class, the likelihood of typicality (there may well be individual opposition to the suit and individual procedural bars to suit), nor that their interests, seeking only a refund of money, cannot adequately be pursued absent class certification.

*v. Smith Barney,* 113 F.R.D. at 65; *see also Rodgers v. Atencio,* 43 Colo.App. 268, 271–72, 608 P.2d 813, 815–16 (1979). Finally, the state's argument that some class members will choose not to accept refunds is speculative at best and, therefore, is not a reasonable argument against typicality.

The claim of all class members is the same: the tax scheme is unconstitutional and, thus, the tax assessed against them under the scheme is unconstitutional. The state does not point to any independent procedural bar except exhaustion of administrative remedies, which we have rejected. Finally, the class representatives will fairly and adequately represent the interests of the class and are themselves represented by competent and experienced counsel. *Moore's Federal Practice, supra,* at ¶ 23.-07[1] (adequate representation includes inquiry into (1) adequacy of representative and (2) adequacy of counsel); *see Sosna v. Iowa,* 419 U.S. 393, 403, 95 S.Ct. 553, 559, 42 L.Ed.2d 532 (1974) ("where it is unlikely that segments of the class appellant represents would have interests conflicting with those she has sought to advance, and where the interests of that class have been competently urged at each level of the proceeding, we believe that the test of [adequate representation] is met"). At this stage of the proceedings, no issue exists as to adequate representation. Counsel for

the taxpayers was successful in obtaining the relief sought by the taxpayers and no purpose would be served by a remand to the district court to determine whether there was adequate counsel or adequate class representatives. We reverse the trial court's ruling in *Kuhn* and hold that the class does meet the requirements of C.R.C.P. 23(a).

In addition to the prerequisites of rule 23(a), class certification requires that the action comply with rule 23(b).[4] The trial court did not address which, if any, of these categories this case might fit into since it found that the potential class did not meet the prerequisites under rule 23(a). On remand, the trial court should determine whether to certify the class based on the further requirements of rule 23(b).

## IV

4 U.S.C. § 111 (1988) states in relevant part:

> The United States consents to the taxation of pay or compensation for personal service as an officer or employee of the United States ... by a duly constituted taxing authority having jurisdiction, if the taxation does not discriminate against the officer or employee because of the source of the pay or compensation.

In *Davis v. Michigan Department of Treasury,* the United States Supreme Court

---

4. Rule 23(b) provides:

> (b) Class Actions Maintainable. Any action may be maintained as a class action if the prerequisites of section
> (a) are satisfied, and in addition:
> (1) The prosecution of separate actions by or against individual members of the class would create a risk of:
> (A) Inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class; or
> (B) Adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interest; or
> (2) The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate

> final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
> (3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:
> (A) The interest of members of the class in individually controlling the prosecution or defense of separate actions;
> (B) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
> (C) The desirability or undesirability of concentrating the litigation of the claims in the particular forum;
> (D) The difficulties likely to be encountered in the management of class action.

said that the overall meaning of section 111 is that

> it waives whatever immunity past and present federal employees would otherwise enjoy from state taxation of salaries, retirement benefits, and other forms of compensation paid on account of their employment with the Federal Government, except to the extent that such taxation discriminates on account of the source of the compensation.

489 U.S. 803, 109 S.Ct. 1500, 1505, 103 L.Ed.2d 891 (1989). The Court concluded that the retention of immunity in section 111 is coextensive with the prohibition against discriminatory taxes embodied in the doctrine of intergovernmental tax immunity. *Id.* 109 S.Ct. at 1506; *see, e.g., Graves v. New York ex rel. O'Keefe*, 306 U.S. 466, 486–87, 59 S.Ct. 595, 601–02, 83 L.Ed. 927 (1939) (intergovernmental tax immunity bars only those taxes imposed on one sovereign by another that are discriminatory).

*Davis* invalidated a Michigan tax scheme that discriminated against federal civil service retirees in favor of state retirees. Taxes that discriminate between state and federal workers based on the source of the income, according to *Davis*, are prohibited unless "the inconsistent tax treatment is directly related to and justified by 'significant differences between the two classes.'" *Id.* 109 S.Ct. at 1508 (quoting *Phillips Chemical Co. v. Dumas Indep. School Dist.*, 361 U.S. 376, 383, 80 S.Ct. 474, 479, 4 L.Ed.2d 384 (1960) (tax levied on leased property unconstitutionally discriminated against private lessees of federal government land)). Neither *Davis* nor *Phillips*, however, indicates what type of differences are "significant" for purposes of upholding a discriminatory tax.

The state claims that section 39–22–104(4)(g) did not discriminate based on the source of the income and that, even if the tax scheme was discriminatory, it was justified by significant differences between military retirement pay and other classes of retirement benefits.

A

In analyzing the tax, the state asserts that, in contrast to nonmilitary "pensions," characterized as deferred compensation for prior services, military retirement pay is current pay for reduced current services. The state claim is that the tax scheme did not discriminate based on the source of the income, but rather on the type of the income. To that end, the state points out that military retirees: (1) remain members of the armed forces subject to recall into active duty, (2) are subject to the Uniform Code of Military Justice, (3) may forfeit some or all of their retirement pay if they engage in certain prohibited activity, and (4) may use their military titles and wear military uniforms.

Several federal cases dealing with nontax issues have concluded that military retirees are still employees of the armed forces and draw pay for reduced service. *See, e.g., United States v. Tyler*, 105 U.S. 244, 26 L.Ed. 985 (1881) (retired officer entitled to pay increase for every five years of service before and after retirement). The state relies heavily on *McCarty v. McCarty*, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), the most recent United States Supreme Court case that addressed the status of military retirement pay. In that case the Court held military retirement pay could not be divided under California community property law. While the Court acknowledged that federal courts had historically defined military retirement pay as current pay for current services, it declined to decide "whether federal law prohibits a State from characterizing retired pay as deferred compensation," since it concluded that military retirement pay was a personal entitlement not subject to community property laws regardless of its categorization as current pay or deferred compensation. *Id.* 453 U.S. at 223, 101 S.Ct. at 2736. The Court noted that some state courts had characterized retirement pay as deferred compensation and that "retired pay bears some of the features of deferred compensation." *Id.* at 224 n. 16, 101 S.Ct. at 2737 n. 16.

> The amount of retirement pay a service member receives is calculated not on the basis of the continuing duties he actually

performs, but on the basis of years served on active duty and the rank obtained prior to retirement. Furthermore, should the service member actually be recalled to duty, he receives additional compensation according to the active duty pay scale, and his rate of retirement pay is also increased thereafter.

*Id.* (citations omitted).[5]

In response to *McCarty*, Congress passed the Uniform Services Former Spouses' Protection Act (USFSPA), 10 U.S.C. § 1408, principally to overrule *McCarty* and, thus, allow states to divide military retirement pay as marital property. *In re Marriage of Gallo*, 752 P.2d 47, 50 n. 3 (Colo.1988). In *Gallo*, we relied in part on the USFSPA to overrule *Ellis v. Ellis*, 191 Colo. 317, 552 P.2d 506 (1976), and held that military retirement benefits were "marital property subject to equitable division in a dissolution proceeding." *Gallo*, 752 P.2d at 54. *Gallo* specifically rejected the state's argument in the present case and held that military retirement pay is "pay ... awarded in return for past services." *Id.* at 52.

> Military retirement pay must be viewed realistically as compensation for past, not present services. Congress's purpose in creating the retirement pay system was to enhance the morale of military personnel and to encourage them to remain in the military, and to compensate them for their limited responsibility to the government after their retirement. This view of military retirement benefits as a form of deferred compensation is closer to economic reality than the view we endorsed in *Ellis*.

*Id.; see also In re Marriage of Fithian*, 10 Cal.3d 592, 604, 517 P.2d 449, 456, 111 Cal.Rptr. 369, 376 ("military retirement pay must be realistically viewed as compensation for past, not present, services"), *cert. denied*, 419 U.S. 825, 95 S.Ct. 41, 42 L.Ed.2d 48 (1974). The state contends that we should now disregard our decision in *Gallo* and hold that, for tax purposes, mili-

tary retirement pay is current pay. We decline to do so.

While it is true that Congress may have intended some portion of military retirement benefits to be current compensation for responsibilities accrued after retirement, *see, e.g., McCarty*, 453 U.S. at 224 n. 16, 101 S.Ct. at 2736–37 n. 16, the overall scheme of the retirement benefits is akin to a civilian pension earned by the service member for years of active service. For example, in the army members are not allowed to draw retirement pay unless they have served a specified period of active service, normally twenty years. 10 U.S.C. § 3911 (1988). Retirement terminates the right to active duty pay and allowances. 37 U.S.C. § 204(a) (1988). In addition, the amount of retirement pay is directly proportional to the number of years spent on active duty. 10 U.S.C. §§ 3926, 3991, 6325–6327, 8929 (1988).

Finally, the State of Colorado itself treats military retirement pay as a pension. *See, e.g.,* § 39–22–104(4)(f)(III), 16B C.R.S. (1990 Supp.) (" 'pensions and annuities' means retirement benefits which are periodic payments attributable to personal services performed by an individual prior to his retirement from employment and which arises ... *from service in the uniformed services of the United States* ") (emphasis added).

We conclude that military retirement pay is a pension and, therefore, that section 39–22–104(4)(g) did discriminate between taxpayers based on the source of their income.

### B

The next issue is whether that discrimination is justified by significant differences between military pensions and other retirement benefits. The state alleges two significant differences in order to justify its differing tax treatment of military retirees under age fifty-five: (1) that military retirees are paid for current services, and (2) statistical differences between military retirees under fifty-five and all other pensioners under fifty-five. We have already dis-

---

**5.** The Court cautioned, however, that the possibility that Congress meant military retirement pay to be current pay suggested that states "tread with caution in this area, lest they disrupt the federal scheme." 453 U.S. at 224 n. 16, 101 S.Ct. at 2736–37 n. 16.

posed of the argument that military retirement benefits are not pensions; the facts which underlie that assertion—that military retirees are subject to recall into active service and must abide by military regulations even after retirement—have no direct relationship to a discriminatory tax scheme.

The statistical differences alluded to by the state are that military retirees under the age of fifty-five tend to receive more retirement benefits than the general population, tend to be employed more than other retirees under the age of fifty-five, and are in a better socio-economic position than their civilian counterparts. The state's argument, however, is squarely foreclosed by *Davis*, in which the Court rejected Michigan's assertion that the fact that state retirement benefits were "less munificent" than federal benefits was a significant difference. *Davis v. Michigan Dept. of Treasury*, 489 U.S. 803, 109 S.Ct. 1500, 1508, 103 L.Ed.2d 891 (1989).

> Even assuming the State's estimate of the relative value of state and federal retirement benefits is generally correct, we do not believe this difference suffices to justify the type of blanket exemption at issue in this case. While the average retired federal civil servant receives a larger pension than his state counterpart, there are undoubtedly many individual instances in which the opposite holds true.

*Id.* In this case, if a military retiree is working in the labor force while collecting his pension, the state will be collecting tax revenue based on the retiree's current wages. The fact that some retirees will collect higher retirement benefits lends no more weight in favor of Colorado's tax scheme than the same argument did for Michigan. "A tax exemption truly intend-

ed to account for differences in retirement benefits would not discriminate on the basis of the source of those benefits; ... rather, it would discriminate on the basis of the amount of the benefits received by individual retirees." *Id.*

We conclude that the state has failed to show significant differences that would justify the discriminatory tax scheme and, therefore, that section 39–22–104(4)(g) was unconstitutional under the doctrine of intergovernmental tax immunity and violated 4 U.S.C. § 111.[6]

## V

■ Finally, the taxpayers argue that if the tax scheme under section 39–22–104(4)(g) was unconstitutional, they are entitled to refunds of all taxes illegally collected under that section. The state claims that under *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), adopted in Colorado in *Marinez v. Industrial Commission*, 746 P.2d 552 (Colo. 1987), we should apply a decision that section 39–22–104(4)(g) is unconstitutional only prospectively. The taxpayers reply that it is unnecessary to reach the *Chevron* test if state statutes mandate refunds.[7]

In *Hackman v. Director of Revenue*, 771 S.W.2d 77 (Mo.1989), the Missouri Supreme Court concluded that refunds were mandated for any taxes illegally collected under a state tax scheme it found unconstitutional under *Davis*. *Id.* at 80–82. Although, as the state does here, Missouri argued that the *Chevron* test should be employed, the court said that

> [b]efore reaching the issue of retroactive/prospective application, [ ] a threshold inquiry is necessary. "In order to reach the retroactivity issue, this court must first decide if ... *state statutory law or state case law* mandates refunds

6. Both *Bohn v. Waddell,* 164 Ariz. 74, 790 P.2d 772 (Ariz.Tax 1990), and *Pledger v. Bosnick,* 306 Ark. 45, 811 S.W.2d 286 (1991), held that, under *Davis,* tax schemes that discriminated against military retirees were unconstitutional. *Cf. Barker v. State,* 249 Kan. 186, 815 P.2d 46 (1991) (holding that military retirement benefits are current pay and thus significantly different than other retirement benefits).

7. Under *Chevron,* a court is to consider three factors in determining questions of retroactivity

in civil cases: (1) a decision to be applied only prospectively must establish a new principle of law, either by overruling clear past precedents or by deciding an issue of first impression not clearly foreshadowed; (2) the court must weigh the merits and demerits of retroactive application; and (3) the court must weigh the inequity that would be imposed by retroactive application in order to avoid injustice or hardship. *Marinez,* 746 P.2d at 556–57.

of taxes paid prior to the Supreme Court's ... decision. If this state's tax refund statutes ... apply, then all other issues are irrelevant."

*Id.* at 80 (quoting *National Can Corp. v. Department of Revenue*, 109 Wash.2d 878, 880, 749 P.2d 1286, 1287 (emphasis added), *cert. denied*, 486 U.S. 1040, 108 S.Ct. 2030, 100 L.Ed.2d 615 (1988)). *Hackman* held that by adopting refund statutes, Missouri had "consented to a refund of any overpayment, erroneous payment or illegal payment of income tax" and, therefore, did not reach the *Chevron* balancing test. *Id.* at 81.

The taxpayers assert that two sections of the Colorado revised statutes mandate refunds of taxes illegally collected through section 39–22–104(4)(g). The first is H.B. 1354, codified at section 39–22–1201, 16B C.R.S. (1990 Supp.), which establishes a revenue fund to "pay claims based on potential invalidity of treatment of military retirement income." Ch. 332, 1989 Colo. Sess.Laws. 1504. The money in the fund is appropriated "for the payment of valid claims for the overpayment of income taxes for years prior to 1989 by members of any component of the armed forces of the United States who made such overpayment on pension income received when they were less than fifty-five years of age." § 39–22–1201(2). Although creation of the fund is not an admission that the tax scheme is unconstitutional, the statute provides that "moneys in the fund *shall* be used only after a ... final determination by a Colorado court when all periods for appeals have expired, that the tax treatment of such income has been invalid." § 39–22–1201(3) (emphasis added).

The taxpayers also point to section 39–21–108(2), 16B C.R.S. (1982), which expressly provides:

If the executive director discovers from the examination of a return within the time periods provided for the filing of refunds, or upon claim duly filed by the taxpayer, *or upon final judgment of a court that the tax, penalty or interest paid by any taxpayer* is in excess of the amount due, *or has been illegally or erroneously collected, then the executive director shall issue* [a refund to the taxpayer].

(Emphasis added.)

The state's response to these two statutes is that "[t]his court should look further than legislative prudence in determining whether refunds are owing" and, as a matter of policy, should decline to award refunds notwithstanding the statutory language. This we decline to do.

▪ The plain reading, and only reasonable interpretation, of sections 39–22–1201 and 39–21–108 is that the General Assembly intended to refund any tax illegally collected under section 39–22–104(4)(g) to the affected taxpayers. Faced with such plain legislative intent, it is both unnecessary and outside our judicial role to look to whether refunds are good policy or whether a balancing test, such as *Chevron*, favors retroactive or prospective application of our holding that section 39–22–104(4)(g) was unconstitutional.[8]

## VI

We affirm the Denver District Court's ruling that the court had subject matter jurisdiction. We reverse the Denver District Court's ruling that the taxpayers in *Kuhn* failed to establish the prerequisites for class certification under C.R.C.P. 23(a) and remand for a determination of whether the proposed class action would meet the requirements of C.R.C.P. 23(b). We conclude that the tax scheme under section 39–22–104(4)(g) was unconstitutional and, thus, affirm both the Denver District Court and El Paso District Court decisions in favor of the taxpayers. We further affirm both courts' rulings that the taxpayers are entitled to refunds for any taxes illegally collected under section 39–22–104(4)(g).

---

**8.** The continued viability of the *Chevron* test is left in doubt by *James B. Beam Distilling Co. v. Georgia*, —— U.S. ——, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991), in which the Court conclud-

ed that a prior case which held that a tax scheme in Hawaii was unconstitutional applied retroactively to the same tax scheme in Georgia.