IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 18, 2011 Session

## ANTHONY F. STIEL, JR. v. SUSAN M. STIEL

**Appeal from the Chancery Court for Williamson County**
**No. 22761      James G. Martin III, Judge**

**No. M2010-01459-COA-R3-CV - Filed March 16, 2011**

This post divorce appeal arises from the lack of symmetry between the parties' 1995 Final Divorce Decree and a 1996 Qualified Domestic Relations Order that was not entered into contemporaneously with the Divorce Decree. The ex-husband, a General Motors retiree, contends the trial court erred in finding that his ex-wife was entitled to the marital portion of his early retirement supplements of his pension and in finding that her benefits are based on post-divorce increases to his pension benefits. For her issue, the ex-wife contends the trial court erred in failing to grant her survivorship rights in the ex-husband's retirement benefits. We affirm the trial court in all respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and ANDY D. BENNETT, J., joined.

James D. Helton II, Franklin, Tennessee, for the appellant, Anthony F. Stiel, Jr.

Mary Frances Lyle, Nashville, Tennessee, for the appellee, Susan M. Stiel.

### OPINION

The marriage of Anthony F. Stiel, Jr. ("Husband") and Susan M. Stiel ("Wife"), which lasted fourteen years, ended in divorce in June 1995. The Final Decree of Divorce included a settlement agreement, which provided that Wife was to receive one-half of the value of Husband's General Motors Retirement Plan earned during the marriage. The provision, as stated in the Final Decree of Divorce, reads: "That the Husband's Saturn 401k plan and the Saturn individual retirement account be divided equally between the parties and the General Motors retirement plan value earned during the marriage be divided equally between the parties." The Final Decree of Divorce was entered by the Clerk & Master on June 23, 1995.

In August of 1996, fourteen months after the entry of the Final Decree of Divorce, a Qualified Domestic Relations Order ("QDRO")[1] was agreed to by the parties, approved and entered by the trial court, and submitted to the General Motors Plan Administrator. The August 1996 QDRO was rejected by the Plan Administrator. An Amended QDRO, dated December 5, 1996, was mailed to the Plan Administrator at General Motors on December 12, 1996. By letter dated February 28, 1997, the General Motors Pension Administration Center notified Wife, Husband, and Husband's attorney that the Amended QDRO was accepted. The letter from the Plan Administrator summarized the substantive portions of the QDRO, stating that Wife was entitled to a share of the early retirement and post-retirement benefits and that Wife would be designated as a surviving spouse, which would entitle her to a marital portion of the surviving spouse benefits. The letter also stated that if the information did not "accurately reflect the intent of the parties, the Order should be amended accordingly." The record reveals that the order was not amended following the receipt of the letter from the General Motors Pension Administrator.

Husband retired from General Motors with thirty years and six months of credited service in August of 2009. A few days thereafter, on August 31, 2009, Husband filed a "Verified Petition to Re-open Case and Amend QDRO," claiming that the QDRO granted Wife benefits that were not provided in the 1995 Final Decree of Divorce. Specifically, Husband contended that Wife was not entitled to any early retirement supplements or post-retirement increases, and that Wife was not entitled to survivorship rights in the event he predeceased her. Wife filed an answer joining the issues raised by Husband.[2] Thereafter, Husband filed an Amended Petition seeking restitution damages in the event that Wife was receiving benefits to which she was not entitled to receive.

After discovery and the taking of at least one deposition, cross-motions for summary judgment were filed by the parties. Following a hearing, the trial court entered an order partially granting and denying the respective motions and expressly stating that it took "particular note" of two opinions, *Cohen v. Cohen*, 937 S.W.2d 823 (Tenn. 1996), and *Croley v. Tiede*, No. M1999-00649-COA-R3-CV, 2000 WL 1473854 (Tenn. Ct. App. Oct. 5, 2000), in reaching its decision. In its order, the trial court granted summary judgment to Wife on two issues, finding that the post-dissolution early retirement supplement and the post-retirement increases were included in the award based upon the language in the Final Decree of Divorce. As for the survivorship rights, the trial court found that survivorship rights were not included based on the language stated in the Final Decree of Divorce and,

---

[1]This QDRO, the first of two, was entered on August 22, 1996.

[2]Wife also filed a Motion to Dismiss, which was denied by the trial court.

thus, the court ruled in Husband's favor on this issue. The trial court also required a second amended QDRO, which was entered on May 29, 2010. This appeal followed.

**STANDARD OF REVIEW**

This appeal arises from the grant of summary judgment. Summary judgment is appropriate when a party establishes that there is no genuine issue as to any material fact and that a judgment may be rendered as a matter of law. Tenn. R. Civ. P. 56.04; *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003). It is appropriate in virtually all civil cases that can be resolved on the basis of legal issues alone. *See Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); *Pendleton v. Mills*, 73 S.W.3d 115, 121 (Tenn. Ct. App. 2001). It is not appropriate when genuine disputes regarding material facts exist. *See* Tenn. R. Civ. P. 56.04. In this action, neither party disputes any material facts; therefore, summary judgment is appropriate. Because the resolution of a motion for summary judgment is a matter of law, we review the trial court's judgment de novo with no presumption of correctness. *Martin v. Norfolk Southern Ry. Co.,* 271 S.W.3d 76, 84 (Tenn. 2008).

**ANALYSIS**

I.
THE 1995 FINAL DECREE OF DIVORCE AND THE 1996 QDRO

The only provision in the 1995 Final Decree of Divorce that pertains to Husband's General Motors pension or retirement benefits and Wife's entitlement to some of those benefits is stated in one sentence, which reads:

> That the Husband's Saturn 401k plan and the Saturn individual retirement account be divided equally between the parties and the General Motors retirement plan value earned during the marriage be divided equally between the parties.

Fourteen months after the entry of the Final Decree of Divorce, the parties agreed to a Qualified Domestic Relations Order ("QDRO"), which was approved by the trial court, entered by the Clerk & Master, and mailed to the GM Pension Plan Administrator. The initial QDRO was rejected by the Plan Administrator and the parties subsequently agreed to and submitted an amended QDRO, which was accepted by the Plan Administrator as evidenced by the February 28, 1997 letter.

Pursuant to the Amended QDRO, Wife, as the Alternate Payee, is entitled to "50% of the Marital Portion (as defined below) of [Husband's] accrued benefit under the Plan as of

the Participant's benefit commencement date or the Alternate Payee's benefit commencement date, if earlier." The QDRO stated that the "Marital Portion" was determined:

> [B]y multiplying the Participant's Accrued Benefit by a fraction, the numerator of which is the 169 months of the Participant's participation under the Plan while married to the Alternate Payee (from May 15, 1981 to June 23, 1995), and the denominator of which is the Participant's total number of months of participation under the Plan until the earliest of the Participation's cessation of benefit accruals, retirement, termination, disability, death or the date that the Alternate Payee commences her benefits under the Plan.

The QDRO further provided:

> The Alternate Payee shall also be entitled to a pro-rata share of any early retirement subsidy or payment provided to the Participant. Such pro-rata share shall be based on the proportion that the Alternate Payee's Benefit holds to the Participant's final accrued benefits. The amount payable to the Alternate Payee shall accordingly be increased in accordance with the Plan Administrator's practices and the Plan's actuarial principles. Should the Participant's benefit change due to a return to employment, the Alternate Payee's monthly benefit amount will be revised correspondingly.

> In addition to the above, the Alternate Payee shall receive a pro-rata share of any cost-of-living adjustments or other economic improvements made to the Participant's benefits on or after the date of his retirement, in the same proportion that the Alternate Payee's Benefit holds to the Participant's final accrued benefits.

## II.
### HUSBAND'S RETIREMENT BENEFIT

Husband continued to work for GM after the divorce; retiring from GM in August of 2009 when he was 50 years old. When he retired, Husband had accrued thirty years and six months credited service at GM, representing a total of 366 months. The parties were married for 169 months of the 366 months of Husband's credited service.

The deposition of the General Motors Pension Plan Administrator, Preston Crabill, provided substantial information and a very detailed analysis explaining how Husband's

-4-

accrued final benefit was calculated.[3] The formula to calculate benefits for one who retires at the age of fifty, which contains general principles, exceptions, deductions, credits, and supplements, is so convoluted it is almost impossible to explain, at least that is the admission of the author of this opinion. Nevertheless, Mr. Crabill provided a thorough and very detailed explanation, which started with a statement that the main criteria for determining Husband's benefit was the years of credited service and a collective bargaining agreement between General Motors and the United Auto Workers (UAW). Mr. Crabill explained, by applying the above formula, any hourly wage employee retiring on August 1, 2009 with thirty years of credited service would be entitled to a benefit of $3,150 per month.[4]

The foregoing notwithstanding, because Husband retired at the age of 50, it was necessary for Mr. Crabill to make detailed calculations to apply numerous deductions, credits, and supplements. These variables, which may be important to GM and the UAW, appear to be of little consequence to Husband's retirement benefit because after calculating all of the variables, Husband is still entitled to a retirement benefit of $3,150. Nevertheless, as Mr. Crabill explained, to make a determination of Husband's retirement benefit, it was necessary to employ the following machinations. First, it was necessary to determine Husband's "basic benefit" at the time of his retirement, which was $53.60[5] for each year of creditable service. Then, he multiplied $53.60 by 30.6 years of service, which produces the sum of $1,640.16. This is the "accrued benefit" that would be payable upon the participant reaching age 62. Pursuant to the pension plan, however, the "accrued benefit" is to be reduced based upon age for an hourly worker who retires before the age of 62 years and one month. According to this segment of the calculations, Husband's benefit would be reduced by 60.6%; this is because he retired at the age of 50. Then, this sum, the so-called "age-reduced basic benefit," is increased by the addition of an "early retirement supplement" to bring the benefit back up to $3,150.00. This supplement would continue until Husband reached the age of 62 and one month, at which time the basic benefit amount would be redetermined. The "early retirement supplemental" is determined based upon negotiated levels with the UAW under the collective bargaining agreement and is determined by a person's credited years of service. Mr. Crabill then explained that any hourly rate employee

---

[3]The deposition of the General Motors Pension Plan Administrator, Preston Crabill, was filed in support of Husband's motion for summary judgment.

[4]Thirty years of credited service is the earliest eligibility date for retirement.

[5]Under the Plan, the basic benefit rate is scheduled to increase incrementally due to the negotiated agreement between GM and UAW. On October 1, 2009, the basic benefit increased by multiplying $53.80 by the years of credited service, and on October 1, 2010, the amount was determined using $54.05 as the amount multiplied by years of service. It is these increases that Husband refers to as the "post-retirement increases" and contends that Wife is not eligible to receive a portion of under the Final Decree.

with 30 plus years of credited service who retired in August of 2009 was entitled to receive the $3,150.00 per month under the GM Pension Plan, the same figure stated in a preceding paragraph.[4] However, Husband's benefit rate was reduced by $82.01 a month, a cost related to the survivor annuity and an additional deduction related to his Saturn pension.[5] After deducting the Saturn deduction and the cost of the survivor annuity, $82.01, from Husband's retirement benefit of $3,150.00 – the amount that Mr. Crabill explained Husband was entitled to receive because he had 30 years of credited service and retired in August of 2009 – as of the date of his retirement in August of 2009, Husband received a net benefit of $3,037.24 per month.[6]

III.
WIFE'S MARITAL PORTION OF HUSBAND'S RETIREMENT BENEFIT

Wife contends that she is entitled to the marital portion of Husband's monthly retirement benefit of $3,037.24, which includes the early retirement supplements and post-retirement increases.[7] Husband does not dispute the fact that Wife is entitled to receive a marital portion of his retirement benefit; however, he insists that Wife's benefit should be based upon the "reduced basic benefit," which is only $564.21, not his full benefit of $3,037.24. Thus, Husband contends that his wife of fourteen years is entitled to receive only $121.65 per month, the marital portion of $564.21. The trial court found that Wife was correct, not Husband. On appeal, Husband asserts that the trial court erred in finding that the early retirement supplement and post-retirement increases are included in the marital property

---

[4]This is why the author of this opinion believes we could have stopped when Mr. Crabill first established that Husband's retirement benefit was $3,150 per month, an amount which is based on the fact Husband had accrued 30 years of credited service.

[5]Although neither party addresses this in their brief, it appears that Husband's Saturn 401k account was merged into the GM Pension Plan at some point. Husband does not currently take any benefit from this account but instead has a reduction taken each month to maintain it and will be entitled to collect on it at some point in the future.

[6]We choose to refer to the amount Husband was entitled to receive as of the date of his retirement.

[7]Wife's coverture fraction is 169/366. As noted earlier, Wife's "Marital Portion" is to be determined:

[B]y multiplying [Husband's] Accrued Benefit by a fraction, the numerator of which is the 169 months of the Participant's participation under the Plan while married to [Wife] (from May 15, 1981 to June 23, 1995), and the denominator of which is [Husband's] total number of months of participation under the Plan until the earliest of [Husband's] cessation of benefit accruals, retirement, termination, disability, death or the date that [Wife] commences her benefits under the Plan [366 months].

award to Wife by the language of the Final Decree of Divorce. We are in agreement with the trial court on this issue.

## A.
### EARLY RETIREMENT SUPPLEMENTS AND POST-RETIREMENT INCREASES

It is well settled in Tennessee that a settlement agreement, now known as a marital dissolution agreement, in a final decree of divorce is a contract which is binding on the parties and as such it is "subject to the rules governing construction of contracts." *Forbes v. Forbes*, No. W2005-00694-COA-R3CV, 2005 WL 2416660, at *5 (Tenn. Ct. App. Sept. 30, 2005) (quoting *Johnson v. Johnson*, 37 S.W.3d 892, 896 (Tenn. 2001)). It is also well settled that judgments are to be construed like other written instruments. *Id*. (citing *Gray v. Estate of Gray*, 993 S.W.2d 59, 63-64 (Tenn. Ct. App.1998) (citing *Livingston v. Livingston*, 429 S.W.2d 452, 456 (Tenn. Ct. App. 1967))). The interpretation of a contract is a matter of law; therefore, our review is "de novo on the record with no presumption of correctness in the trial court's conclusions of law." *Witham v. Witham*, No. W2000-00732-COA-R3-CV, 2001 WL 846067, at *3 (Tenn. Ct. App. July 24, 2001) (citing *Union Planters Nat'l Bank v. Am. Home Assurance Co.*, 865 S.W.2d 907, 912 (Tenn. Ct. App.1993)).

The foregoing legal principles are important to this case because the 1995 Final Decree of Divorce, which contains the parties' settlement agreement, became a final, non-appealable judgment long before either of the 1996 QDROs were entered into by the parties and approved by the court. Therefore, we first look to the settlement agreement in the Final Decree of Divorce. The pertinent part of the Final Decree of Divorce states:

> That the Husband's Saturn 401k plan and the Saturn individual retirement account be divided equally between the parties and *the General Motors retirement plan value earned during the marriage be divided equally between the parties*. (Emphasis added).

Based upon the above, we must now determine whether Husband's early retirement benefits and the post-retirement increases are, or are not, included in the above language. The trial court held that they were included and relied upon the reasoning in two cases to reach that decision, *Cohen v. Cohen,* 937 S.W.2d 823 (Tenn. 1996), and *Croley v. Tiede*, No. M1999-00649-COA-R3-CV, 2000 WL 1473854 (Tenn. Ct. App. Oct. 5, 2000). We will therefore examine these and other relevant cases.

 In *Cohen v. Cohen*, our Supreme Court held that unvested retirement benefits that accrued during the marriage were marital property under the Tennessee statutory scheme and thus subject to division. *Cohen*, 937 S.W.2d at 830. The value of the unvested retirement

benefits must be determined at a date as near as possible to the date of divorce. *Id*. The court went on to recognize that there might be difficulty in determining the value of such benefits, but such difficulty could be alleviated by "the use of elastic, equitable approaches." *Id.* at 830-31 (citing 24 Am. Jur. 2d *Divorce and Separation* §§ 948, 949 (1983)). The court then examined the two equitable techniques that courts could use: the "present cash value method" and the "deferred distribution method." *Id*. at 831.

The deferred distribution method, the method at issue in this action, was found to be preferable "when the vesting or maturation is uncertain or in which the retirement benefit is the parties' greatest or only economic asset."[8] *Id*. (citing *Kendrick v. Kendrick*, 902 S.W.2d 918, 927 (Tenn. Ct. App. 1994)). Under this method, the court determines the formula for dividing the monthly benefit at the time of the decree, although the benefit distribution does not occur until the benefits become payable. *Id*. (citing *In re Marriage of Brown*, 544 P.2d 561, 567 (Cal. 1976); *In re Marriage of Gallo*, 752 P.2d 47, 55 (Colo. 1988); *Janssen v. Janssen*, 331 N.W.2d 752, 753 (Minn. 1983); *Deering v. Deering*, 437 A.2d 883, 891 (Md. Ct. Spec. App. 1981)). The *Cohen* court explained further:

> The marital property interest is often expressed as a fraction or a percentage of the employee spouse's monthly benefit. The percentage may be derived by dividing the number of months of the marriage during which the benefits accrued by the total number of months during which the retirement benefits accumulate before being paid.

*Id*. (citing *Kendrick*, 902 S.W.2d at 927 n.17).

> One advantage to the deferred distribution method is that it allows an equitable division without requiring present payment for a benefit not realized and potentially never obtained. *In re Marriage of Gallo*, 752 P.2d at 55. Another

---

[8] *"The present cash value approach is preferable if* the employee-spouse's retirement benefits can be accurately valued, *if the retirement is likely to occur in the near future*, and if the marital estate includes sufficient assets to offset the award." *Cohen*, 937 S.W.2d at 831(citing *Kendrick v. Kendrick*, 902 S.W.2d 918, 927 (Tenn. Ct. App. 1994); *In re Marriage of Gallo*, 752 P.2d 47, 54 (Colo. 1988)) (emphasis added). In the present value approach, the trial court must place a present value on the retirement benefit as of the date of the final decree. *Id*. (citing *Kendrick*, 902 S.W.2d at 927). This is accomplished by multiplying the anticipated number of months the employee spouse will collect the benefits (based on life expectancy) by the current retirement benefit payable under the plan, then discounting that figure to the present value allowing for factors such as inflation, interest, mortality, and taxes. *Id*. (citing *In re Marriage of Gallo*, 752 P.2d at 54; *In re Marriage of Grubb*, 745 P.2d 661, 666 (Colo. 1987); *In re Marriage of Hunt*, 397 N.E.2d 511, 519 (Ill. App. Ct. 1979)). Once the present cash value is determined, the court awards the non-employee spouse's portion of the retirement benefits in the form of marital property equal to the amount of the non-employee spouse's share of the retirement benefit. *Id*.

advantage to the approach is that it equally apportions any risk of forfeiture. While a disadvantage may be that the approach requires a trial court to retain jurisdiction to oversee the payment, the entry of an order awarding a certain percentage of the benefits at the time of payment should lessen the administrative burden of the court. Courts routinely retain jurisdiction to supervise payments of alimony and child support and have, in the past, successfully divided vested pension rights by awarding each spouse a share. An administrative burden should not excuse an inequitable distribution of marital property.

*Cohen*, 937 S.W.2d at 831.

In *Croley v. Tiede*, No. M1999-00649-COA-R3-CV, 2000 WL 1473854 (Tenn. Ct. App. Oct. 5, 2000), the parties' marital dissolution agreement stated that the deferred distribution method would be used to divide the unvested retirement benefits. *Id*. at *1. The parties did not dispute the fraction that was to be applied; the issue was to which portion of the retirement benefits the fraction would be applied. *Id*. The husband's pension benefit was determined by his annual income during his three highest paid years of employment, which occurred after the divorce. *Id*. Not surprisingly, the husband argued that the wife was only entitled to a percentage of his retirement benefit based upon income earned during the marriage. *Id*. The court framed the issue as: "Whether the Wife can receive a portion of the Husband's retirement based upon the increased salary the Husband was receiving at the time of retirement as opposed to the lesser salary he was receiving at the time of divorce?" *Id*. at *3.

To answer the above question, the court looked to *In re Marriage of Hunt*, 909 P.2d 525, 532 (Colo. 1995), which held that "the application of the 'time rule' formula[9] necessarily includes post-dissolution pension enhancements." *Id*. at *4 (quoting *Hunt*, 909 P.2d at 532). The court then reasoned:

[P]ost-dissolution increases in pension benefits are marital property when the trial court, in the sound exercise of its discretion, divides the pension under either the deferred distribution or reserve jurisdiction method. The "economic partnership" in the pension necessarily continues between the parties and post-dissolution increases (or decreases) of the pension are marital property unless

---

[9]The "time rule formula" is the deferred distribution method in which a marital fraction, also known as the coverture fraction, is used to determine the marital interest in the pension plan. *Croley*, 2000 WL 1473854, at *4 (citing *In re Marriage of Hunt*, 909 P.2d at 531).

the nonemployee spouse is paid the net present value of his or her share of the pension at the time of dissolution.

*Id*. (quoting *Hunt*, 909 P.2d at 532). As the court explained, its reasoning was based on the "marital foundation theory," stating:

> Typically, there is commingling of effort undertaken during the marriage and after the marriage which together enhance the value of the future benefit. The employee spouse's ability to enhance the future benefit after the marriage frequently builds on foundation work and efforts undertaken during the marriage. Hence, the theory underlying the "time rule" formula is called the "marital foundation" theory.

*Id*. (quoting *Hunt,* 909 P.2d at 534). The court further noted that, when using the deferred distribution method, the marital foundation theory was preferable to the so-called "bright line" rule, which equates post-dissolution pension benefits with post-dissolution earnings. As the court further explained:

> [T]he "bright line" rule would require courts to attempt to parse out the "marital" portion of the post-dissolution enhancement from the "separate" portion, *i.e.,* that portion attributable solely to the efforts of the employee spouse and not related to the marriage whatsoever. *Implementation of the "time rule" formula, in the first instance, accomplishes that goal and removes courts from the complicated, time-consuming, inefficient, and hopelessly flawed task of evaluating the enhancement and denominating the enhancement as either marital, separate, passive, or some combination thereof. . . .* It is not appropriate for courts to delve into this sort of analysis for a number of reasons. Such inquiry would lead to widely divergent and inconsistent results, inject an element of fault into the property division, and enmesh the courts in the parties' lives for many years.

*Croley*, 2000 WL 1473854, at *4-5 (emphasis added).

Applying the reasoning in *Hunt* and another Colorado decision, *In re Marriage of Kelm*, 912 P.2d 545 (Colo. 1996), it was determined that:

> [P]ost-dissolution increases in pension benefits are to be used in calculating the benefits payable to the non-employee spouse at the time of the retirement of the employee spouse when the trial court, in its discretion, employs the

retained jurisdiction or deferred distribution method to value and distribute pensions.

*Croley*, 2000 WL 1473854, at *6-7. The court went on to reason that under the deferred distribution method the nonemployee spouse should receive a portion of the employee spouse's *actual monthly retirement benefit*, noting that this conclusion was supported by *Kendrick* and *Cohen*. *Id*. at *7 (citing *Cohen*, 937 S.W.2d at 831; *Kendrick*, 902 S.W.2d at 930 n.25) ("Indeed in *Cohen*, wherein the Tennessee Supreme Court adopted much of *Kendrick*'s holding that non-vested retirement benefits are marital property, the court's language indicated that the non-employee spouse should receive a portion of actual retirement payments.").

We find, based upon the reasoning in *Croley* and *Cohen*, the trial court correctly found that the post-dissolution increases in Husband's pension benefits are included in Wife's award pursuant to the Final Divorce Decree. Additionally, the trial court correctly found that the "early retirement supplement" to Husband's pension is included in the award to Wife as she is entitled to a portion of Husband's *actual retirement payment*. The inclusion of these benefits is entirely consistent with the language of the Final Decree of Divorce, as the amount was determined by Husband's 30.6 years of credited service and, thus, was *value earned during the marriage*.

We are mindful of Husband's assertion that the language of the Final Decree of Divorce is unambiguous, and since the post-dissolution increases and early retirement supplements were not specifically granted to Wife in the decree, then she is not entitled to them. In making this argument, Husband relies on our decision in *Pruitt v. Pruitt*, 293 S.W.3d 537 (Tenn. Ct. App. 2008), which he insists controls as it involves a General Motors pension plan.

In *Pruitt*, the husband appealed the finding that he was in willful contempt of the final decree of divorce, and the parties' QDRO, which was entered into at the time of the parties' divorce in 1997. *Id*. at 539. The initial QDRO of the parties was rejected by the plan administrator of husband's pension plan upon its submission at the time of husband's retirement in 2004. *Id*. The parties submitted a second QDRO in 2006, however, this QDRO "materially and substantively changed the division of marital property in the Final Decree." *Id*.

The parties' marital dissolution agreement in the final divorce decree stated that the wife was entitled to forty percent of:

The total of all [pension and retirement benefits] accrued up to the date of execution of this Agreement that are not awarded elsewhere herein," and this was reflected by the 1997 QDRO prepared by the parties, which stated that wife was entitled to a "pro-rata share of any employer-provided early retirement subsidy provided to the Participant [Husband] on the date of his retirement.

*Id*. at 540. Additionally, the Pruitts' marital dissolution agreement and the 1997 QDRO, which was entered into contemporaneously with the divorce decree, stated that the wife was entitled to a surviving spouse benefit. *Id*. The 2004 QDRO, however, provided that the wife was not entitled to any portion of "the early retirement supplement, interim supplement, or temporary benefit." *Id*. at 541. The 2004 QDRO was also rejected by the plan administrator. Thereafter, the wife filed a petition for contempt against the husband for failing to secure her share of the retirement benefits. *Id*. The trial court found that she was entitled to a percentage of her ex-husband's "gross retirement payments, notwithstanding the fact that he opted for early retirement because [t]he original 1997 QDRO specifically addressed the division of any early retirement benefits." *Id*.

We held in *Pruitt* that the 1997 QDRO was "expressly incorporated into the MDA, and thus the Final Decree of Divorce, and was contemporaneously executed and entered therewith," and therefore "the QDRO must be treated as part of the parties agreement to divide the marital property." *Id*. at 543 (citing *Thornton v. Thornton*, 746 N.W.2d 627, 629-30 (Mich. Ct. App. 2007)). The 1997 QDRO provided that the wife was entitled to a pro-rata share of any employment-provided early retirement subsidy provided the husband, and because the 1997 QDRO was "part of a judgment that had become final and non-appealable, the revisions could not materially or substantially modify the division of marital property as set forth in the Final Decree of Divorce." *Id*. Thus, we held that any subsequent QDRO was "unenforceable to the extent it materially and substantively modifies the division of marital property as expressed in the Final Decree of Divorce." *Id*. at 544.[10]

---

[10]Husband contends that in *Pruitt*, this court adopted the "Michigan Rule," based upon our reliance on *Thornton v. Thornton*, 746 N.W.2d 627, 629-30 (Mich. Ct. App. 2007). The "Michigan Rule" provides that when a final divorce decree is silent on early retirement or survivorship rights and a QDRO is not entered with or incorporated into the divorce decree, then those rights are not properly granted to the spouse. *See Quade v. Quade*, 604 N.W.2d 778 (Mich. Ct. App. 1999); *Roth v. Roth*, 506 N.W.2d 900 (Mich. Ct. App. 1993). However, we believe Husband misconstrues our holding in *Pruitt*. Our holding in *Pruitt*, was that a QDRO cannot substantially alter the award granted in a final decree. We cited to *Thornton* for the proposition that "the provisions of a contemporaneous QDRO must be treated as part of the settlement because the parties approved the content of the judgment of divorce at the same time they approved the initial QDRO referred to by the judgment of divorce." *Pruitt*, 293 S.W.3d at 543 (citing *Thornton*, 746 N.W.2d at

(continued...)

-12-

Our holding in this action is not inconsistent with *Pruitt*.[11] Here, the 1995 Final Decree of Divorce simply stated that Wife was entitled to a percentage of the value of Husband's pension plan earned during the marriage. The parties' 1996 QDRO simply provided the means of determining the value of the award to Wife of Husband's pension plan earned during the marriage in a manner entirely consistent with the case law previously discussed in *Cohen* and *Croley*. The deposition of Mr. Crabill clearly demonstrates that the "early retirement supplement" and the "post-retirement increases" *are not benefits that Husband earned after the marriage*. Instead, Mr. Crabill emphasized the fact that *these benefits were guaranteed to any GM hourly wage earner retiring with 30.6 years of credited service*. Without the fourteen years of service during the parties' marriage, the period of coverture, Husband would not have earned thirty years of credited service when he retired at the age of fifty. He would only have earned sixteen years of credited service. Therefore, Husband would not have been eligible, at the age of fifty, to receive the benefits he is now receiving from GM if the coverture period is not included.

We, therefore, affirm the trial court's findings that the early retirement supplements and post-retirement increases are included in the marital property award to Wife pursuant to the language in the Final Decree of Divorce.

B.
SURVIVOR BENEFIT

For her issue, Wife contends the trial court erred in finding that a survivor benefit was not automatically included in the award of Husband's pension plan based upon the language of the Final Decree of Divorce. We find no error with this decision.

The Final Decree states that Husband's "GM retirement plan value earned during the marriage be divided equally between the parties." In the subsequent QDRO, Wife was designated as the surviving spouse for purposes of establishing her entitlement to the Qualified Preretirement Survivor Annuity (QPSA). Mr. Crabill, the Plan Administrator, testified that the declaration in the QDRO had the effect of designating Wife to receive 65

_____

[10](...continued)
629-30). To find that our decision expansively adopted the approach that Michigan courts take to unvested pensions is simply not accurate.

[11]We also find this action is distinguishable from *Pruitt* because the initial QDRO was not filed contemporaneously with the Final Decree of Divorce.

percent of an "unreduced for age basic benefit if [Husband] were to pass away.[12] However, the trial court, relying on the language in the Final Decree of Divorce, instead of the subsequent QDRO, found that the survivorship option was not automatically included, that it was a "completely separate aspect of the calculation of [Husband's] retirement benefit," that the survivorship option did not "naturally" flow from the use of the time rule formula, and that it was not negotiated for or bargained for by the parties.

Wife asserts that the trial court failed to recognize that she has a federally protected right to the survivor benefit, one that is protected unless she expressly waives it in writing. In this regard she relies on 42 U.S.C. §1055, which states that a non-employee spouse is automatically entitled to the right to a survivor annuity unless it is specifically waived by the non-employee spouse. We have determined that 42 U.S.C. §1055 does not apply to the facts of this case. The federal statute does provide that the non-employee spouse is automatically entitled to this benefit; however, the statute is inapplicable here because she is not the spouse, she is the ex-spouse, and therefore does not retain protection under § 1055 after the dissolution of the marriage. *See Potts v. Potts*, 790 A.2d 703, 708 (Md. Ct. Spec. App. 2002) (citing Joan M. Krauskopf and Sharon Burgees Seiling, *A Pilot Study on Marital Power as an Influence in Division of Pension Benefits at Divorce of Long Term Marriages*, 1996 J. Disp. Resol. 169, 173 (1996)); *see also* Albert Feuer, *Who is Entitled to Survivor Benefits from ERISA Plans?*, 40 J. Marshall L. Rev. 919 (2007).[13] We, therefore, find that Wife's reliance on 42 U.S.C. §1055 is misplaced.

The question here is whether the survivor benefit was included, based upon the language in the Final Decree, in the award of benefits to Wife. Stated another way, was the survivor benefit marital property separate and apart from the pension plan, or was it an indivisible part of a benefit earned during the marriage.

Husband contends the trial court correctly found that Wife is not entitled to the survivor benefit because the Final Decree of Divorce did not expressly award that benefit to her. Husband cites Michigan case law in support of this argument. *See Roth*, 506 N.W.2d 900; *Quade,* 604 N.W.2d 778 (both holding that the right of survivorship in pension benefits will not be awarded to a divorced spouse unless specifically identified as part of the pension

---

[12]Crabill stated that there was not a 50 percent joint and survivor option available within the General Motors Hourly Rate Employees Pension Plan.

[13]Not to be confused with the term "surviving spouse" – meaning one who was still married at the time of death, – a former spouse may be named by the employee spouse as the survivor under the pension plan, *if a valid QDRO is entered*. *See* 29 U.S.C. § 1056(d)(3)(F)(i). In this case, we determined the QDRO is not valid – to the extent it is inconsistent with the Final Decree of Divorce – because it was not entered into contemporaneously with the Final Decree.

award in a final judgment of divorce).

Based upon our research, this issue has not been specifically addressed in Tennessee. Thus, we look to other jurisdictions for guidance. The Court of Special Appeals of Maryland addressed this very issue in *Potts v. Potts*, 790 A.2d 703 (Md. Ct. Spec. App. 2002), and concluded that survivor benefits are separate and distinct from pension plan benefits. *Potts*, 790 A.2d at 714. The Maryland court noted that several other states agreed:

> A number of courts in other states have also found that survivor benefits are marital property separate and apart from the pension plans to which they are attached. *Fielitz v. Fielitz*, 1998 WL 918815 at *2, 1998 Del. Fam. Ct. LEXIS 182 at *4 (Del. Fam. Ct.1998) ("The Court, however, views survivor annuities as a unique form of marital asset.") (citing *Caldwell, supra*); *Smithberg v. Illinois Mun. Retirement Fund*, 192 Ill.2d 291, 302, 248 Ill. Dec. 909, 735 N.E.2d 560, 567 (2000) (the "survivor benefit . . . has been held to be a 'distinct property interest'"); *Workman v. Workman*, 106 N.C. App. 562, 564, 418 S.E.2d 269, 270 (1992) (mentioning pension and survivor benefits as separate marital property); *Rowlan v. Rowlan*, 1991 Ok. Civ. App. 88, 817 P.2d 1285, 1286 (Okla. Ct. App.1991) (referring to a disability pension and survivor benefits as distinct pieces of marital property); *Nemeth v. Nemeth*, 325 S.C. 480, 488-89, 481 S.E.2d 181, 186 (S.C. Ct. App.1997); *Dugan v. Childers*, 261 Va. 3, 8, 539 S.E.2d 723, 725 (2001) (citing *King v. King*, 225 Ga. App. 298, 300, 483 S.E.2d 379, 382 (1997), for the proposition that a military Survivor Benefit Plan is a distinct piece of marital property); and *Smith v. Smith*, 190 W.Va. 402, 404, 438 S.E.2d 582, 584 (1993) (same).

*Id*. at 714.[14]

We are persuaded by the reasoning and holding in Maryland, which is followed by several other jurisdictions, that the survivor annuity is a separate and distinct benefit from the pension plan benefits. The time rule formula used in the deferred distribution method is incompatible with the survivor annuity. As would be the case here, awarding Wife the

---

[14]The court also noted that other states "either expressly treat or otherwise appear to treat survivor benefits as an indivisible part of a spouse's pension benefits." *Id*. (citing *Landers v. Landers,* 631 So.2d 1043, 1045 (Ala. Civ. App.1993) (appear to treat them as indivisible, although the court does not explicitly say so); *Zito v. Zito,* 969 P.2d 1144, 1145 (Alaska 1998) (finding that, once the parties agreed to divide the pension, the survivor benefits must also be divided because they are an "integral part" of the pension); *In re Marriage of Payne,* 897 P.2d 888, 889 (Colo. Ct. App.1995) ("we also do not view the Survivor Benefit Plan as a separate asset"); *Conaway v. Conaway,* 899 S.W.2d 574, 576 (Mo. Ct. App.1995) (suggesting, although not explicitly stating, that survivor benefits are merely one part of pensions)) (parentheticals in original).

survivor annuity has the effect of reducing Husband's pension benefit.[15] Further, because this is considered a separate benefit from a pension benefit, it would be ill advised to allow a mere implication to serve as the justification to award this separate benefit to Wife, especially because, under federal law, it has the irrevocable effect of disqualifying a subsequent spouse, who may be the ultimate surviving spouse, from being eligible for any portion of this benefit. *See* Albert Feuer, *Who is Entitled to Survivor Benefits from ERISA Plans?*, 40 J. Marshall L. Rev. 919 (2007).

Based upon the above reasoning and the absence of any reference to the survivor benefit in the Final Decree of Divorce, we find, as the trial court did, that Wife was not awarded the survivor benefit, the non-contemporaneous QDRO notwithstanding.

IV.
THE COST OF POSTPONING THE INEVITABLE – THE QDRO

Many of the issues that arose in this case, and in other similar cases, are due to the lack of symmetry between the Final Decree of Divorce and a subsequent, non-contemporaneous QDRO. As duly noted in *Potts*:

> Notwithstanding their importance, issues and practice surrounding QDROs can give rise to contentious proceedings after a judgment of absolute divorce has been granted, because "ERISA does not necessarily require that a QDRO be part of the actual judgment in a case." *Hogle v. Hogle,* 732 N.E.2d 1278, 1281 (Ind.Ct.App.2000), *transfer denied,* 753 N.E.2d 9 (Ind. 2001) (citing *In re Marriage of Bruns,* 535 N.W.2d 157, 162 (Iowa Ct. App.1995)). *See also Rohrbeck,* 318 Md. at 42-43, 566 A.2d 767, and Elizabeth M. Wells, *Step One: Draft the QDRO,* 24 Fam. Adv. 20 (Fall, 2001). . . .

> Whatever the reason, this delay unfortunately creates a false sense of finality and generates questions regarding the appealability of divorce judgments involving pension issues. In the opinion of one commentator, **"[d]rafting a qualified domestic relations order (QDRO) concurrently with the divorce is essential**." Gary Shulman, *QDROs-The Ticking Time Bomb,* 23 Fam. Adv. 26, 26 (Spring, 2001). We agree that this would appear to be the better practice.

---

[15]The *Potts* court addressed this effect and held that the valuation of the pension, for the purpose of determining the non-employee spouse's share, should be determined "prior to the employee making any elections that would diminish the value" such as in the case of a survivor annuity. *Potts,* 790 A.2d at 719.

*Potts*, 790 A.2d at 709-10 (emphasis added). We are in full agreement with the above reasoning. Thus, we urge attorneys drafting Final Decrees of Divorce in which pension benefits and survivor benefits are at issue, to heed the above recommendation and draft the QDRO contemporaneously with, and to read symmetrically with, the pertinent language in the Final Decree of Divorce so that issues such as these do not arise.

### In Conclusion

The judgment of the trial court is affirmed in all respects, and this matter is remanded with costs of appeal assessed against both parties equally.


_____
FRANK G. CLEMENT, JR., JUDGE