IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 9, 2016 Session

**ELIZABETH ANN MORROW GRANOFF v. ANDREW SCOTT GRANOFF**

**Appeal from the Circuit Court for Jefferson County**
**No. 19472-II     Hon. Richard Vance, Judge**

---

**No. E2015-00605-COA-R3-CV-FILED-MARCH 16, 2016**

---

This second appeal of this post-divorce case concerns the husband's continued occupation of the marital residence.  Upon remand, the trial court imposed a rental obligation upon the husband and established a reserve price for the auction sale of the residence.  We modify the court's decision to reflect an imposition of rent that conforms to the marital dissolution agreement.  We affirm the decision in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed as Modified; Case Remanded**

JOHN. W. MCCLARTY, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J. and THOMAS R. FRIERSON, II, J., joined.

William A. Mynatt, Jr., Knoxville, Tennessee, for the appellant, Andrew Scott Granoff.

James R. Scroggins, Jefferson City, Tennessee, for the appellee, Elizabeth Ann Morrow Granoff.

**OPINION**

**I.     BACKGROUND**

Elizabeth Ann Morrow Granoff ("Wife") and Andrew Scott Granoff ("Husband") were divorced by order of the court on May 16, 2006.  In their 21 years of marriage, Husband and Wife (collectively "the Parties") amassed significant assets, including their marital residence ("the Property"), a luxury estate situated on 26 acres with an approximately 9,000 square foot home, a guest house, a swimming pool, and tennis courts.  As pertinent to this appeal, the Parties' marital dissolution agreement ("MDA"), incorporated into the final judgment of divorce, provided as follows:

**REAL PROPERTY:** The parties own a residence and land located at 390 Highway 113, White Pine, Tennessee 37980, as tenants by the entireties. The land shall be immediately placed for sale. Wife shall be given a Trust Deed to secure an interest in the property of $460,000.00 or 30% of the proceeds, whichever is higher. If the house and land are not sold within four years of the date of the entry of the Final Judgment of Divorce, Husband shall have an additional two years to sell the property but shall begin paying a monthly payment to [W]ife equal to a monthly portion of the prime interest rate on the $460,000.00, should Husband fail to make a payment as required, Wife shall have the right to demand an immediate auction subject to the same conditions set forth herein regarding an auction of the property. If the house has not sold in six years from the date of entry of the divorce it shall be auctioned by a reputable auction company with a mutually agreeable reserve. At the time of any nonauction sale, after the payment of any expenses of said sale, the Wife shall receive (30%) of the net proceeds or $460,000.00, whichever is greater. Should the property require an auction, the parties shall divide the proceeds of the auction, after the payment of the expenses of the sale evenly between them. Until such time as the property is sold, Husband shall have the right to reside in the marital residence and shall be responsible for the reasonable maintenance and upkeep as well as the property tax and insurance. The Husband may decide to auction the home at any time with a reputable auction [company] and a mutually agreeable reserve.

When Husband's efforts to sell the Property proved unsuccessful, the parties announced an agreement whereby Wife was permitted to market and sell the Property. The agreement was memorialized in a written order on September 6, 2011. The order provided, in pertinent part, as follows:

1.      [Wife] shall assume the right to list, market, show and sell [the Property]. [Husband] shall continue to occupy the residence and he shall cooperate fully with [Wife] with regard to showing the premises and marketing the premises for sale. [Wife] shall have full access to come upon the [P]roperty, to show the [P]roperty, inspect the [P]roperty, and otherwise participate in the usual and customary acts associated with sale.

2.      In the event that [the Property] does not sell pursuant to the listing of said property on or before August 1, 2009, [Wife] shall select a date during the month of October 2009 for the [P]roperty to be sold at auction with an auctioneering firm to be agreed between the attorneys of the parties. [Husband] shall comply with previous orders relative to upkeep,

maintenance, payment of real estate taxes and maintaining sufficient insurance with regard to the [P]roperty.

3. [Wife] shall assume responsibility for attempting to secure a one (1) year loan with monthly interest only and principal being payable on the anniversary date of the loan in an amount up to sixty thousand dollars ($60,000.00) with the loan proceeds utilized to satisfy past-due taxes, penalty and interest, and the expense of insurance premium for [the Property]. [Husband] shall cooperate fully with [Wife] in her attempts to secure the loan and he shall sign notes, instruments, or other documents necessary and associated with applications and the securing of the loan. The funds borrowed shall be repaid from funds of [Husband] upon sale of [the Property]. He shall continue to be responsible for all of the expenses associated with taxes, maintenance, insurance and upkeep of the marital residence that he occupies pending sale.

Despite the significant passage of time and the provision providing for an auction, the Property was never offered at auction because the Parties could not agree on a reserve price. In August 2013, Wife secured an offer for the sale of the Property at a price of $925,000. She filed a motion to approve the sale at that price. Husband opposed the sale and questioned her authority to convey the Property without his approval. The trial court approved the sale and affirmed Wife's authority to convey the property without Husband's approval. A panel of this court affirmed the trial court's order, despite the fact that the purchase and sale contract had expired and had not been renewed by the potential purchasers. *Granoff v. Granoff*, No. E2013-02598-COA-R3CV, 2014 WL 4792652, at *6-15 (Tenn. Ct. App. Sept. 26, 2014) ("*Granoff I*").

Upon remand, the trial court considered Wife's post-judgment motion to impose a monthly rental obligation of $10,000 per month for Husband's continued occupancy of the Property. Wife later filed a motion to order the sale of the Property at auction with a reserve price established by the trial court. In support of her motion, she alleged that the recent proceedings, as recounted in *Granoff I*, indicated that she and Husband could not establish a mutually agreeable reserve price. She provided her preferred reserve price under seal and requested that Husband also propose a reserve price for the court's consideration. Husband obliged and provided his proposal under seal. We will not recount the specific reserve price suggested by either party in an effort to protect the future marketability of the Property. We do note that Husband's reserve price exceeded $925,000, while Wife's price was below $925,000.

Following a hearing on the pending motions, the court adopted Wife's reserve price, appointed two auctioneers, ordered the auction sale of the Property "at the earliest

reasonable time," and imposed a rental obligation on Husband in the amount of $6,000 per month. Husband filed a motion to alter or amend, requesting a reduction in his monthly rental obligation and questioning the court's authority to impose a rental obligation beyond that provided for in the MDA. A hearing was held during which Wife recounted her financial difficulties as a result of Husband's refusal to cooperate with the sale of the Property. The court granted the motion to alter or amend, in part, by reducing the rental obligation to $3,000 per month. This timely appeal followed.

## II.    ISSUES

We consolidate and restate the issues raised on appeal by Husband as follows:

A.    Whether the trial court erred in setting the monthly rental obligation.

B.    Whether the trial court erred in setting the reserve price for the auction sale of the Property.

Wife presented an issue for our consideration on appeal that we restate as follows:

C.    Whether Wife may approve the auction sale of the Property without court approval in the event that the highest bid is less than the reserve price set by the trial court.

## III.    STANDARD OF REVIEW

We review a trial court's findings of fact de novo with a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). We review questions of law de novo with no presumption of correctness. *Whaley v. Perkins*, 197 S.W.3d 665, 670 (Tenn. 2006).

In Tennessee, a marital dissolution agreement incorporated into a final decree of divorce "is a contract which is binding on the parties and as such it is 'subject to the rules governing construction of contracts.'" *Johnson v. Johnson*, 37 S.W.3d 892, 896 (Tenn. 2001); *Honeycutt v. Honeycutt*, 152 S.W.3d 556, 561 (Tenn. Ct. App. 2003). "[T]he interpretation of a contract is a matter of law." *Honeycutt*, 152 S.W.3d at 561. Decisions regarding the value of marital property are questions of fact. *Kinard v. Kinard*, 986 S.W.2d 220, 231 (Tenn. Ct. App. 1998).

# IV. DISCUSSION

## A.

Husband argues that the trial court's imposition of a monthly rental obligation was an impermissible modification of the MDA. In the alternative, he claims that the court imposed an obligation he cannot meet given his monthly income and expenses. Wife responds that review of this issue is waived because Husband did not object to the court's authority to impose a rental obligation. In the alternative, she claims that the court did not err in setting the rental obligation.

Our review confirms that this issue is not waived because Husband objected to the court's authority to impose a rental obligation beyond that provided for in the MDA. In Husband's motion to alter or amend, he argued, in pertinent part, as follows:

> It should also be noted that the [MDA], the contract between the [P]arties regarding [the Property], contains no provision for rent. It contains a clause that requires [Husband] to [begin paying a monthly payment to Wife equal to a monthly portion of the prime interest rate on the $460,000]. Prime rate is currently 3.25%, which applied to $460,000 is [$1,245.83] per month. There is also a question regarding to whom any such rent is owed. The property is the joint property of the parties. [Husband] should not have to pay 100% of any rent to [Wife].

In this state, a MDA incorporated into a final decree of divorce "is a contract which is binding on the parties." *Stiel v. Stiel*, 348 S.W.3d 879, 885 (Tenn. Ct. App. 2011). This court discussed the general rules and principles guiding the construction of a contract by stating as follows:

> The cardinal rule in the construction of contracts is to ascertain the intent of the parties. If the contract is plain and unambiguous, the meaning thereof is a question of law, and it is the Court's function to interpret the contract as written according to its plain terms. The language used in a contract must be taken and understood in its plain, ordinary, and popular sense. In construing contracts, the words expressing the parties' intentions should be given the usual, natural, and ordinary meaning. If the language of a written instrument is unambiguous, the Court must interpret it as written rather than according to the unexpressed intention of one of the parties. *Courts cannot make contracts for parties but can only enforce the contract which the parties themselves have made.*

*Pitt v. Tyree Org. Ltd.*, 90 S.W.3d 244, 252 (Tenn. Ct. App. 2002) (internal citations omitted) (emphasis added). Additionally, a MDA "is not subject to later modification by the court." *Hannahan v. Hannahan*, 247 S.W.3d 625, 627 (Tenn. Ct. App. 2007) (citation omitted).

As pertinent to this appeal, the MDA provides as follows:

Wife shall be given a Trust Deed to secure an interest in the property of $460,000.00 or 30% of the proceeds, whichever is higher. If the house and land are not sold within four years of the date of the entry of the Final Judgment of Divorce, *Husband shall have an additional two years to sell the property but shall begin paying a monthly payment to [W]ife equal to a monthly portion of the prime interest rate on the $460,000.00*, should Husband fail to make a payment as required, Wife shall have the right to demand an immediate auction subject to the same conditions set forth herein regarding an auction of the property. If the house has not sold in six years from the date of entry of the divorce it shall be auctioned by a reputable auction company with a mutually agreeable reserve. At the time of any nonauction sale, after the payment of any expenses of said sale, the Wife shall receive (30%) of the net proceeds or $460,000.00, whichever is greater. Should the property require an auction, the parties shall divide the proceeds of the auction, after the payment of the expenses of the sale evenly between them. *Until such time as the property is sold, Husband shall have the right to reside in the marital residence and shall be responsible for the reasonable maintenance and upkeep as well as the property tax and insurance.* The Husband may decide to auction the home at any time with a reputable auction [company] and a mutually agreeable reserve.

(Emphasis added.).

Under the clear language of the MDA, Husband was given the right to reside in the marital residence until the Property is sold. His right to occupy is subject to a monthly payment "equal to a monthly portion of the prime interest rate on the $460,000.00," effective upon the expiration of four years following the entry of the judgment of divorce. In her appellate brief, Wife characterized this "monthly payment" as an obligation to pay rent. We agree with this characterization; however, the Parties explicitly provided for the amount of the obligation. To the extent that the court's imposition of rent exceeds this amount, the court was in error. Accordingly, we modify the judgment to reflect an imposition of rent that conforms to the MDA. In so holding, we further conclude that the obligation to pay rent is in addition to Husband's obligation

to remit payment for the property taxes and insurance and to ensure the reasonable maintenance and upkeep of the Property pursuant to the terms of the contract.

B.

Husband argues that the trial court failed to protect the value of the Property by setting a reserve price below the fair market value. He notes that the court relied on testimony concerning "what the experts believed the [P]roperty would sell for" instead of establishing the actual fair market value of the Property. Wife responds that the court did not err in setting the reserve price given the loss of the prior offer of $925,000; the lack of an additional offer; the length of time the Property has been on the market; and the cost to maintain the property.

The trial court may order the sale of the marital property by public auction pursuant to Tennessee Code Annotated section 36-4-121(a)(3). In such cases, "[t]he court, in its discretion, may impose any additional conditions or procedures upon the sale of property . . . as are reasonably designed to ensure that such property is sold for its fair market value." Tenn. Code Ann. § 36-4-121.

Here, the trial court ordered an auction sale and set a reserve price to ensure that the Property was sold at fair market value. In setting the reserve price, the court stated,

> The marital residence identified in the pleadings and the real property associated therewith shall be sold at auction. The [c]ourt has given due consideration to testimony previously rendered from real estate professionals and is now well familiar with the nature and extent of the real property consisting of the marital residence in Jefferson County, Tennessee.
>
> The [c]ourt establishes the amount of reserve for the auction sale of the marital residence and real property to be the amount submitted by [Wife].

Like the trial court, this court is now well familiar with the Property. *See Granoff I*, 2014 WL 4792652, at *6-12 (recounting the testimony concerning the nature and extent of the Property and the difficulty in securing a reasonable offer). Husband may be correct that the Property is worth substantially more than the reserve price. However, "fair market value" is defined, in pertinent part, by Black's Law Dictionary, 10th ed., as "[t]he price that a seller is willing to accept and a buyer is willing to pay on the open market and in an arm's-length transaction." Given the failure of either party to secure the sale of the Property in the almost ten years since the entry of the final judgment of divorce and the unique nature of the Property, we uphold the trial court's setting of the reserve price as

indicative of the fair market value.  In so holding, we reject Husband's assertion that the trial court failed to protect the fair market value of the Property.

C.

In an effort to prevent future delays and the need for additional appellate review, Wife asks this court to grant her the authority to approve the auction sale of the Property without court approval in the event that the highest bid is less than the reserve price set by the trial court.  We are sympathetic to Wife's predicament given the significant passage of time since the entry of the final judgment of divorce.  However, this request was not considered by the trial court.  Appellate courts "cannot exercise original jurisdiction" and act as the "trier-of-fact."  *Peck v. Tanner*, 181 S.W.3d 262, 265 (Tenn. 2005) (citations omitted); *see also Pierce v. Tharp*, 461 S.W.2d 950, 954 (Tenn. 1970) (rejecting appellants' "novel" request to adduce proof in support of their motion).  The jurisdiction of this court is "appellate only."  Tenn. Code Ann. § 16-4-108.  Additionally, a party may not offer a new issue for the first time on appeal.  *Lane v. Becker*, 334 S.W.3d 756, 764 (Tenn. Ct. App. 2010) (citing *Campbell Cnty. Bd. of Educ. v. Brownlee-Kesterson, Inc.*, 677 S.W .2d 457, 466-67 (Tenn. Ct. App. 1984)).  "The jurisprudential restriction against permitting parties to raise issues on appeal that were not first raised in the trial court is premised on the doctrine of waiver."  *Fayne v. Vincent*, 301 S.W.3d 162, 171 (Tenn. 2009) (citations omitted).

## V.    CONCLUSION

The judgment of the trial court is affirmed as modified to reflect an imposition of rent that conforms to the marital dissolution agreement.  This case is remanded to the trial court for such further proceedings as may be necessary.  Costs of the appeal are taxed one-half to the appellant, Andrew Scott Granoff, and one-half to the appellee, Elizabeth Ann Morrow Granoff.

_____
JOHN W. McCLARTY, JUDGE