# IN THE COURT OF APPEALS OF TENNESSEE
# AT NASHVILLE
January 23, 2013 Session

## KITTY FERN (DARDEN) SARTAIN v. MITCHELL CARL SARTAIN

**Appeal from the Chancery Court for Montgomery County**
**No. MC-CH-CV-DI-07-50     Laurence M. McMillan, Chancellor**

---

**No. M2012-01603-COA-R3-CV - Filed June 27, 2013**

---

This appeal arises from the second divorce between these parties. Husband and Wife were married for nineteen years, divorced in 1997, and then married again for thirteen additional years. In this second divorce, the trial court awarded Wife alimony *in futuro* and alimony *in solido* in addition to 45% of Husband's military retirement pay. As part of the first divorce the trial court had awarded Wife 36% of Husband's military retirement pay. Although Husband retired in 2006, Wife had not received any portion of his retirement pay. Wife requested the court in this second divorce award her the money she should have been paid from the date of Husband's retirement to the date of the second divorce. The trial court declined to make that award. On appeal we affirm the trial court's judgment awarding Wife alimony *in futuro* and alimony *in solido*. We reverse the court's judgment denying Wife the portion of Husband's retirement pay she had been awarded in the first divorce, and we remand the case for a hearing on the issues surrounding the Survivor Benefit Plan.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Reversed in Part, and Remanded**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and RICHARD H. DINKINS, JJ., joined.

Justin Sensing, Clarksville, Tennessee, for the appellant, Mitchell Carl Sartain.

Larry B. Watson, Clarksville, Tennessee, for the appellee, Kitty Fern (Darden) Sartain.

## OPINION

Kitty Fern (Darden) Sartain ("Wife") and Mitchell Carl Sartain ("Husband") were married for thirteen years when they were granted a divorce in 2012. This was their second

marriage to one another.[1] The trial court awarded Husband the marital home and ordered Husband to pay Wife one half of the equity in the home. The court awarded Wife 45% of Husband's retirement pay, alimony *in futuro* in the amount of $1,000 per month, and alimony *in solido* in the amount of $5,000. The court also ordered Husband to designate Wife as the recipient of Husband's military Survivor Benefit Plan ("SBP" or the "Plan"), stating that Husband "shall execute any documents to designate the Wife as said beneficiary. Any previous waiver signed by Wife is set aside."

Husband filed a notice of appeal, arguing the trial court erred in the following ways: (1) awarding Wife alimony *in futuro*; (2) awarding Wife alimony *in solido*; and (3) awarding Wife Husband's SBP Benefits. Wife raises an issue on appeal as well. Wife argues the trial court erred by refusing to award her a judgment for 36% of Husband's retirement pay that she was awarded when the parties were divorced in 1997. Husband retired in 2006, and Wife claims that 36% of Husband's retirement pay constituted separate property that she was entitled to receive from the date of Husband's retirement until the date she was awarded 45% of Husband's retirement as a result of the second divorce.

## I. ALIMONY AWARDS

The trial court awarded Wife alimony *in futuro* and alimony *in solido*, stating the following from the bench at the end of the trial:

> The alimony component, the Court does find that Mrs. Sartain should be awarded the sum of $5,000 as alimony *in solido*, which are her attorney's fees.

> And taking into account the statutory factors, to include the relative earning capacity, obligations, needs and financial resources of each party, certainly Mr. Sartain outweighs her in that regard. The relevant education and training of each party would be likewise. He has quite a bit more education and training than she does. The duration of the marriage; in this case, it being 13 years approximately. The age and mental condition of each party, the physical condition of each party, the extent to which it would be undesirable for a party to seek employment outside the home, the separate assets of each party, the provisions made with regard to marital property, the standard of living of the parties, the extent to which each party has made tangible and intangible contributions, the relative fault of the parties and other factors, to

---

[1]The parties' first marriage lasted for nineteen years and ended in 1997, two years before they remarried.

include tax consequences; the Court will award Mrs. Sartain the sum of $1,000 per month as alimony in futuro, conditioned upon her death or remarriage.

Our review on appeal of the trial court's findings of fact is *de novo* with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Blair v. Brownson*, 197 S.W.3d 681, 684 (Tenn. 2006); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001); *Hass v. Knighton,* 676 S.W.2d 554, 555 (Tenn. 1984). We review a trial court's conclusions of law *de novo*, with no presumption of correctness. *Whaley v. Perkins*, 197 S.W.3d 665, 670 (Tenn. 2006); *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87, 91 (Tenn. 1993).

Trial courts have "wide discretion in determining matters of spousal support." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011). This discretion extends to the nature, the amount, and the duration of an award. *Id.* (citing *Bratton v. Bratton*, 136 S.W.3d 595, 605 (Tenn. 2004), *Burlew v. Burlew*, 40 S.W.3d 465, 470 (Tenn. 2001), and *Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn. 2000)). A trial court's decision regarding spousal support is factually driven and involves the careful balancing of several factors. *Gonsewski*, 350 S.W.3d at 105. An appellate court is therefore disinclined to second-guess a trial court's spousal support decision and will limit its review to determining whether the trial court abused its discretion. *Id.* (citing *Robertson v. Robertson*, 76 S.W.3d 337, 343 (Tenn. 2002)). A trial court abuses its discretion if it applies an incorrect legal standard, reaches an illogical result, resolves an issue based on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice. *Gonsewski*, 350 S.W.3d at 105 (citing *Wright ex rel. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011) and *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010)). An appellate court is not to substitute its judgment for that of the trial court where reasonable minds can disagree about the propriety of the trial court's decision. *Jackman v. Jackman*, 373 S.W.3d 535, 541-42 (Tenn. Ct. App. 2011) (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998) and *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001)).

**A. Alimony *in Futuro***

Husband contends the trial court abused its discretion in awarding Wife alimony *in futuro* in light of the court's award to Wife of 45% of Husband's retirement pay,[2] Wife's

---

[2]The evidence introduced at trial showed that Wife's portion of Husband's retirement pay would be approximately $2,200 per month until July 2014 and then about $2,800 per month thereafter.

award of half the equity in the marital home,[3] and Wife's ability to earn a living.

In determining whether an award of support and maintenance is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court is to consider factors specified in Tenn. Code Ann. § 36-5-121(I). Among those are relative earning capacity and financial resources of the parties, relative education and training of each party, duration of the marriage, and the standard of living during the marriage. Also relevant, as Husband asserts, are the separate assets of each party and the marital property awarded to each.

Tennessee law recognizes several different types of spousal support. Tenn. Code Ann. § 36-5-121. Alimony *in futuro* is intended to provide long-term support to an economically disadvantaged spouse when rehabilitation is not feasible:

> Alimony *in futuro*, also known as periodic alimony, is a payment of support and maintenance on a long term basis or until death or remarriage of the recipient. Such alimony may be awarded when the court finds that there is relative economic disadvantage and that rehabilitation is not feasible, meaning that the disadvantaged spouse is unable to achieve, with reasonable effort, an earning capacity that will permit the spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties.

Tenn. Code Ann. § 36-5-121(f)(1).

The parties were married most recently for 13 years, and prior to this marriage the parties were married for 19 years. Thus, by the time the parties were divorced in 2012, they had been married for 32 of the prior 34 years. During a majority of the time the parties were married, Wife took care of the home and family needs while Husband worked and supported the family financially.

The evidence showed that Husband retired in 2006 from the military as a full colonel. He has two bachelor degrees and is just a few classes shy of earning his master's degree. Husband earns in excess of $14,000 per month. Husband's monthly expenses are about $4,360.

---

[3]The trial court valued the marital home at $161,500 and determined that Wife's one-half equity interest was $23,175.50, which amount Husband was ordered to pay by April 30, 2013.

Wife has an associates degree in interior design and is not currently employed. She worked for less than two years during the parties' second marriage and testified she did not work more because Husband did not want her to work. Wife has suffered health problems over the past six years and testified that she is depressed as a result of Husband's demeaning treatment of her. Wife introduced evidence that her monthly expenses total about $3,820.

In making its award of alimony, the trial court considered the parties' relative earning capacities, financial resources, education, training, mental and physical conditions, the duration of the marriage, and the extent to which each party contributed to the marriage. The most important factors are Wife's need and Husband's ability to pay. *Bratton v. Bratton*, 136 S.W.3d at 604. Husband does not deny his ability to pay Wife $1,000 per month. Given the trial court's wide discretion in determining the type and amount of spousal support to award, we find the evidence does not preponderate against the trial court's award and that the trial court did not abuse its discretion in awarding Wife $1,000 per month of alimony *in futuro*. Accordingly, we affirm the trial court's judgment in this regard.

### B. Alimony *in Solido*

An award of attorney's fees in the context of a divorce constitutes alimony *in solido* that is payable in one lump sum. *Riggs v. Riggs*, 250 S.W.3d 453, 459, n.3 (Tenn. Ct. App. 2007); *Kinard v. Kinard*, 986 S.W.2d 220, 235 (Tenn. Ct. App. 1998). As with other types of alimony, a trial court should consider the relevant factors set out in Tenn. Code Ann. § 36-5-121(I) in determining whether an award of alimony *in solido* is warranted. *Riggs*, 250 S.W.3d at 459. The decision to award alimony *in solido* lies within the sound discretion of the trial court judge, however, and we will not interfere with the trial court's decision unless the evidence preponderates against it. *Kinard*, 986 S.W.2d at 236.

When Wife was asked at trial whether she had money to pay her attorney, she responded "No." To demonstrate her entitlement to attorneys' fees, Wife was not required, as Husband suggests, to prove that he prolonged the divorce proceedings. As with other types of alimony, the need of Wife and the ability of Husband to pay are the primary considerations. Husband has not shown the trial court abused its discretion in awarding Wife alimony *in solido* or that the evidence preponderates against the trial court's award. We therefore affirm the trial court's award of alimony *in solido* to Wife in the amount of $5,000.

### II. SURVIVOR BENEFIT PLAN AWARD

The SBP is a federal benefit that provides an annuity to a military retiree's spouse, former spouse, or dependent child following the retiree's death, and is governed by federal law. *See generally* 10 U.S.C. § 1448(a)(1)(A)-(2)(A). Tennessee law treats survivorship

benefits as marital property. *Stiel v. Stiel*, 348 S.W.3d 879, 891-92 (Tenn. Ct. App. 2011). As part of its division of the parties' marital property in this divorce, the trial court awarded Wife SBP benefits by ordering Husband to designate Wife as the SBP beneficiary.

The federal law governing SBP provides that participation is automatic unless the individual entitled to military retirement pay elects not to participate. An individual who is married when he or she retires cannot opt out of the Plan without the concurrence of the individual's spouse. 10 U.S.C. § 1448(a)(3)(A)(I). If an individual then elects to opt out of the Plan, that election is irrevocable after the date when the individual first becomes entitled to retirement pay. 10 U.S.C. § 1448(a)(4)(A). Opting out of SBP increases the amount of the retiree's monthly retirement pay.

Husband retired in September 2006 and began to receive his retirement pay at that time. Husband did not testify about whether he formally elected to opt out of the Plan before he became eligible to receive his retirement pay. A document called "Retiree Account Statement" was marked as an exhibit at trial, and in the section "Survivor Benefit Plan (SBP) Coverage" is the following sentence: "No SBP election is reflected on your account." However, no testimony was provided to explain the document or the particular notation on it. Consequently, we do not know if this language means (a) Husband elected to opt out of the Plan or (b) Husband made no election to opt out of the Plan and is, therefore, still a participant in the Plan.

Wife testified at trial that during the parties' first divorce she signed a paper waiving her rights to receive SBP payments in exchange for Husband's promise to name her as the sole beneficiary on his Veterans' Group Life Insurance ("VGLI"), which she testified has a value of $400,000. Wife testified that Husband did not follow through on his promise, however, and named Husband's mother instead of Wife as the sole beneficiary on his VGLI policy.[4]

The question of whether Husband in fact opted out of the Plan before he began receiving his retirement payments is relevant to the efficacy of the trial court's order that Husband designate Wife as the SBP beneficiary. According to the language of the federal statute, that election may have become irrevocable.

Because we cannot speculate as to how the trial court's other awards might have been affected by the unenforceability of its order regarding the SBP, we remand this case back to

---

[4]Wife testified that only after Husband's mother died did Husband change the beneficiaries, but it is not clear whether Wife is currently listed as a beneficiary, whether the parties' children are listed as beneficiaries, or whether Wife and the children are listed as beneficiaries on Husband's life insurance policy.

trial court with directions that the court consider additional proof to determine (1) whether Husband has irrevocably opted out of the Plan and (2) whom Husband has named as the beneficiary(ies) on his VGLI policy. The trial court may then, based upon that evidence, make an appropriate ruling.

### III. RETIREMENT PAY AWARDED TO WIFE IN EARLIER DIVORCE

When the parties were first divorced in 1997, the trial court awarded Wife 36% of Husband's retirement pay,[5] which was to become payable when Husband retired from the military. Husband retired in 2006 and began receiving his retirement pay. Wife has not received any portion of the retirement pay. Wife asked the trial court in this case to award her the amount she was entitled to receive from the date of Husband's retirement in 2006 through the date of the parties' second divorce. The trial court denied this request, stating the following in its Final Decree of Divorce:

> 4. The Wife was previously awarded Thirty Six percent (36%) of the Husband's retirement from the military. She is not to receive that portion and an additional portion from this divorce. This new award is cumulative of both the previous marriage percentage and this marriage and her total award for both marriages is 45%.

> 5. There is no award to the Wife for portions of the military retirement that the Wife claims the Husband did not pay to her between the last divorce and this marriage and divorce so the Wife's request for back pay is denied.

Wife contends the trial court erred in refusing to award her this portion of Husband's retirement pay, arguing that the 36% award constitutes "separate property" to which she is entitled, regardless of the parties' later decision to get remarried in 1999. Wife relies on *Hurst v. Hurst*, 2001 WL 456063 (Tenn. Ct. App. April 30, 2001), in support of her argument. The parties in *Hurst* were married and divorced twice, as Wife and Husband were here. When the trial court granted the Hursts their first divorce in 1991, it awarded Ms. Hurst one-half of Mr. Hurst's retirement benefits, one-half of the amount Mr. Hurst received from a profit-sharing program, and some stock pursuant to a marital dissolution agreement the parties presented to the court. *Id.* at *1. Ms. Hurst never received any of these assets. Mr. and Ms. Hurst then remarried for a second time in 1992, and after they were divorced in 1997

---

[5]The record does not contain any orders from the parties' first divorce, but Wife testified she was awarded 36% of Husband's retirement pay as part of the parties' initial divorce. Husband acknowledged in his pre-trial brief that the parties entered into a Marital Dissolution Agreement ("MDA") as part of the first divorce and that the MDA provided Wife would receive 36% of his military retirement.

Ms. Hurst filed a complaint seeking an award of the property she was awarded from the first divorce. *Id.* Ms. Hurst argued that the final decree of divorce was just like any other judgment that can be satisfied when one party obtains a judgment against another party. *Id.* at *2.

The trial court denied Ms. Hurst's request on the basis that "the original divorce decree was compromised and settled by the parties' subsequent remarriage and re-divorce . . . almost like a novation of a contract." *Id.* at *2. The Court of Appeals reversed the trial court's judgment on the basis that the MDA dividing the marital property constituted a contract, and Ms. Hurst had the contractual right to the property described in the MDA, regardless of the parties' subsequent marriage and divorce. *Id.* at *4. The Court of Appeals also found that the property Ms. Hurst was awarded as part of the first divorce became "separate property" upon entry of the decree approving the MDA:

> The property awarded to Ms. Hurst in MDA # 1, more specifically, one-half of the Alcoa Retirement Plan, one hundred percent (100%) of the stock at Merrill Lynch, and one-half of all sums received by husband from Alcoa Profit Sharing Program became the separate property of Ms. Hurst upon the execution of MDA # 1. Mr. and Ms. Hurst signed an MDA which is a legal binding contract. The property at issue then became separate property Ms. Hurst brought into her second marriage. It is irrelevant that it was Mr. Hurst that Ms. Hurst married following her first divorce. Had Ms. Hurst married Mr. Hurst following a divorce from someone other than Mr. Hurst, there would be no argument as to whom the property she received from her first divorce belonged. An argument that Ms. Hurst somehow waives her right to property that became hers in her first divorce simply because she married the same man twice is without merit.

*Id.* at *6.

Applying that holding to the facts herein, we agree with Wife that the award to her from the parties' first divorce of 36% of Husband's retirement pay, whenever he started drawing it, became her separate property when the parties divorced in 1997. Husband had signed an enforceable contract to pay Wife that amount upon his retirement, and that obligation was never canceled. As the court in *Hurst* pointed out, had Wife herein married someone else after the parties' first divorce, Husband would have been required to pay her the percentage of his retirement pay that he had agreed to, and that he had been ordered to pay.

Husband contends the trial court properly denied Wife an award of this 36% because

Husband paid Wife alimony *pendente lite* from 2009 until the time of trial. As explained above, this 36% award constituted separate property awarded as part of the first divorce. It was not alimony, nor did it substitute for Husband's obligation to pay support during the pendency of the **second** divorce.

Additionally, Husband does not disagree that the 36% award to Wife became her separate property in 1997, but he contends Wife has waived her rights to this money by failing to take any steps to enforce her rights to receive these funds. Husband relies on *Richmond v. Richmond*, 2012 WL 1594280 (Tenn. Ct. App. May 7, 2012), to support his argument.[6] The parties in *Richmond* were divorced in 1999, and the wife was awarded one-half of the husband's military retirement pay up until the date of divorce when the husband retired at some then unknown time in the future. The husband retired in 2010, and the wife filed a motion the following year to clarify the amount of his retirement pay she was to receive. *Id.* at *1. The trial court determined that the wife was entitled to 42.5% of the husband's retirement pay and that the husband was required to pay her the amount that had accrued from the date of his retirement in 2010 through June 2011, which was when the trial court ruled on the wife's motion. *Id.*

On appeal the husband contended the trial court erred in awarding the wife the amount he should have paid pursuant to the earlier judgment. He argued she had waived her right to receive this portion of his retirement pay because she waited twelve years to complete the paperwork necessary to receive this money. *Id.* at *3. The Court of Appeals rejected the husband's argument and upheld the trial court's judgment because it found no evidence in the record to suggest the wife intended to disclaim her share of the husband's retirement. *Id.* at *3-4. The court noted that there was nothing to collect until 2010, when the husband retired, which was just one year before the wife filed her motion to clarify the amount she was entitled to receive. *Id.* at *4.

In this case Husband retired on September 30, 2006. The parties were still married, but the evidence showed that they were living separately during this time. Wife filed her complaint seeking a divorce in January 2007. Wife testified during the trial that Husband retired in 2006, but she was not asked when she became aware that he had retired, and Husband did not testify that he informed Wife of his retirement at any time.

---

[6]Even though the *Richmond* court concluded the wife did not waive her rights to receive the husband's retirement benefits, Husband argues the result should be different here because Wife waited for longer than a year after Husband retired to request the 36% she was awarded in the first divorce.

Waiver is a voluntary relinquishment or renunciation of some right, a foregoing or giving up of some benefit or advantage, which, but for such waiver, [s]he would have enjoyed. It may be proved by express declaration; or by acts and declarations manifesting an intent and purpose not to claim the supposed advantage; or by a course of acts and conduct, or by so neglecting and failing to act, as to induce a belief that it was his intention and purpose to waive.

*Baird v. Fidelity Phenix Fire Ins. Co.*, 162 S.W.2d 384, 389 (Tenn. 1942) (quoted with approval by *Reed v. Washington Cnty. Bd. of Educ.*, 756 S.W.2d 250, 255 (Tenn. 1988)). If, on the other hand, an individual does not know of her rights, or if she fails to understand them, she cannot waive those rights. *Faught v. Estate of Faught*, 730 S.W.2d 323, 326 (Tenn. 1987).

In the absence of evidence showing Wife voluntarily relinquished her rights to the 36% of Husband's retirement she was awarded in the first divorce, we conclude Wife has not waived her rights to this money. We remand this issue to the trial court to calculate the amount accrued for the period starting from the date of Husband's retirement in 2006 until the Final Decree was entered in this case.

## IV. CONCLUSION

We affirm the trial court's judgment awarding Wife alimony *in futuro* in the amount of $1,000 per month and alimony *in solido* in the amount of $5,000. We remand the case to the trial court for additional evidence to determine whether or not Husband has opted out of the federal SBP program and/or complied with the life insurance beneficiary obligation and for rulings based on that evidence. The trial court shall also calculate the amount of Husband's retirement pay that she should have received from Husband's retirement from the date of Husband's retirement to the time when Wife began receiving 45% of these benefits and enter a judgment in that amount to Wife.

Costs of this appeal are taxed to Mitchell Carl Sartain for which execution may issue if necessary.

_____
PATRICIA J. COTTRELL, JUDGE